# RICE-STIX DRY GOODS COMPANY v. SCHWARZENBACH-HUBER COMPANY.

TRADEMARKS: REGISTRATION; ABANDONMENT; ASSIGNMENT; PRIOR USE.

1. Registration of a trademark establishes prima facie ownership in the registrant, and places the burden of proof on one claiming prior use.

2. Use of a word as a trademark cannot be predicated upon an assignment of the mark by the former member of a dissolved copartnership, who on dissolution of the firm did not continue its business. Under such circumstances the mark becomes abandoned and subject to appropriation by anyone.

3. In determining prior use of a mark, it is immaterial whether in its use it was printed or written on the goods, or on the container in which the goods were sold, so long as the mark conveyed to the purchaser knowledge of the origin or source of manufacture of the goods to which it was applied.

No. 1134.   Patent Appeals.   Submitted November 16, 1917.   Decided January 7, 1918.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark interference.          *Affirmed.*

The facts are stated in the opinion.

*Mr. James A. Carr* for the appellant.

*Mr. E. T. Fenwick* and *Mr. L. L. Morrill* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is a trademark interference in which the contending parties are each claiming the prior right to the use of the word "Society" as a trademark for silk piece goods.

Appellant, Rice-Stix Dry Goods Company, a Missouri corporation, was granted registration of the mark in January,

1915. Appellee, The Schwarzenbach-Huber Company, a New Jersey corporation, is seeking registration of the mark, and, from the decision of the Commissioner granting its request, this appeal was taken.

Both the mark and the use are the same. The sole question is, Which one used it first in such a manner as to constitute, under the law, a trademark use? Appellant's registration of the mark establishes prima facie ownership, and places the burden upon appellee as the junior party.

The use by appellant, prior to July 1, 1914, is dependent upon a purchase of the mark from one Duncan. Witnesses were produced to show use of the mark by the firm of Duncan & Stenz in 1904 and 1905. Duncan & Stenz dissolved partnership in the latter part of 1905, and ceased to use the mark thereafter. Disposing of the business of the firm, the mark was turned over to Duncan, but Duncan in no way continued the business of the firm. In 1914 Duncan assigned the mark to appellant corporation. The property right of Duncan & Stenz in the mark was dependent upon the continuous use of the mark in their business. When they ceased to continue the business, the mark was abandoned, and was subject to appropriation by anyone. It follows that the assignment of the mark in 1914 was a mere nullity, so far as establishing an earlier use by appellant. Duncan & Stenz had no property right in the mark separate and apart from their business. A transfer of the business could have carried the mark with it, and the purchaser would succeed to all the rights of the vendor in the mark. But when they abandoned their business, the mark became abandoned. *Eiseman* v. *Schiffer*, 157 Fed. 473. It is clear, therefore, that July 1, 1914, is the earliest date available for appellant.

We think appellee has established a trademark use of the word "Society" on silk goods since 1912. Appellant, however, contends that appellee's use amounted to nothing more than a grade mark, since the mark was written on the wrapper with a pencil, instead of being printed on the label, and was applied only to a particular style or weave of silk goods. Whether the mark be printed or written on the goods, or on the container in

which the goods are sold, is immaterial, so long as the mark conveys to the purchaser knowledge of the origin or source of manufacture of the goods to which it is applied. Hopkins, Trademarks, p. 65. The evidence conclusively shows not only such a use of the mark by appellee company, but that it was regarded as a trademark use by the trade generally.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                                                 *Affirmed.*

A petition for a rehearing was denied January 26, 1918.