38 C.C.P.A.(Patents)

## In re LYNDALE FARM.

### Patent Appeals No. 5736.

United States Court of Customs and Patent Appeals.

Jan. 16, 1951.

724

Clarence A. O'Brien and Harvey B. Jacobson, Washington, D. C., (John H. Lewis, Jr., Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C., (W. J. Derenberg, New York City, of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

Lyndale Farm is a partnership in the business of breeding cattle at Floydada, Texas. It applied in September 1947 to the United States Patent Office for entry of the words "Lyndale Farm" upon the principal register under the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., hereinafter more particularly described, as a trade-mark for live cattle. The firm alleged use of the mark in commerce beginning in September 1940 and stated that it was "applied to the crates in which the cattle are shipped by means of labels or tags on which the mark is shown." The specimen submitted to show actual use is a photograph of a crate, sufficiently large to enclose a cow or steer, to which is affixed a placard, "Lyndale Farm, Floydada, Texas."

The Examiner of Trade-Marks refused registration of the words "Lyndale Farm" on the ground that they are merely a trade name and lack the essential characteristics of a trade-mark. The firm promptly appealed to the Commissioner of Patents alleging that "Lyndale Farm" functions both as a trade name and a trade-mark. The Examiner's Statement, prepared by the Head of Trade-Mark Operations in the Patent Office, in response to the appeal, based the refusal to register on two grounds; viz., that the mark is primarily geographically descriptive, and that it is used merely as a trade name. The first ground was held to be ruled by In re Lamson & Co., 135 F.2d 1021, 30 C.C.P.A. (Patents) 1030. The second ground was premised upon the manner of use, the mark appearing to the examiner to be used on the crate as a shipping tag, merely "informing the outside world of the location and name of the farm from which the cattle originates."

The Assistant Commissioner of Patents in a well reasoned opinion, 80 U.S.P.Q. 45, agreed with appellant that the Lanham Act does not forbid registration of a trade-mark otherwise eligible merely because it is also a firm or trade name in whole or part, but observed that if such words are to qualify for registration it is necessary that their use be such as to identify the goods rather than the manufacturer or his location. The Assistant Commissioner thought that the cattle crate placard served merely to inform "the outside world of the location and name of the farm," and held that as so used the mark sought to be registered functioned not as a trade-mark but as a trade name and could not be entered on the principal register. He also concluded that the mark is unregisterable because primarily geographically descriptive.

Lyndale Farm by its counsel has appealed to this court from the decision of the Assistant Commissioner, 15 U.S.C.A. § 1071; R.S. § 4911, 35 U.S.C.A. § 59a, 28 U.S.C.A. § 1542. There thus comes before us the first appeal arising on an application for registration filed in the Patent Office subsequent to the effective date of the Lanham Act.[1]

On behalf of the appellant it is asserted that "Lyndale Farm" functions in a dual capacity, as both a trade-mark and a trade name. Appearing on the placard placed on the side of the shipping crate, "Lyndale Farm" is said by appellant to "serve 'to identify his goods and distinguish them from those—sold by others,'" satisfying thereby the definition contained in Sec. 45 of the Lanham Act: "The term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." The words "Floydada, Texas" also appearing on the placard, ap-

pellant thinks, do not detract from the trade-mark significance of "Lyndale Farm" but merely designate the location of the mark's owner. Thus it is, appellant states, that "Lyndale Farm" identifies its user's goods as well as indicating its business name, and functions in the dual capacity of trade-mark and trade name.[2]

On behalf of the Commissioner of Patents it is urged here that the use of "Lyndale Farm" with "Floydada, Texas" is the commercial use of a business name, and is not a trade-mark use, though counsel does not dispute that under some circumstances a name may be used both as a trade-mark and a trade name. It is advanced, however, that in this case the words "Lyndale Farm" do not identify a brand of cattle but merely serve as a shipping tag to state the location of the business whence the cattle originate.

Sections 1 and 2 of the Lanham Act, 15 U.S.C.A. §§ 1051 and 1052, specify that it is "trade-marks" which are registrable on the principal register, while Sections 3 and 4, 15 U.S.C.A. §§ 1053 and 1054, permit the registration of service marks, collective marks, and certification marks in the same manner and effect as trade-marks and with entitlement to the same protection as the Act accords trade-marks, though the Commissioner is authorized to establish a separate register for such marks. Section 7(b) of the Act, 15 U.S.C.A. § 1057(b), accords to the certificate of registration of marks registered on the principal register *prima facie* evidence of valid registration, ownership in the registrant, and his exclusive right to use the mark in commerce on specified goods or services. Section 15, 15 U.S.C.A. § 1065, adds the important feature of incontestability of right to use a mark which has been in continuous use for five consecutive years following the date of registration, subject to four provisos, the fourth of which states that "no incontestable right

1. Act of July 5, 1946, c. 541, 60 Stat. 427, 15 U.S.C.A. §§ 1051–1127.

2. Sec. 45 of the Lanham Act, 15 U.S.C.A. § 1127, defines "trade name" as includ-

ing firm names used *inter alia* by merchants and others to identify their businesses; and names used by firms engaged in trade or commerce.

726

shall be acquired in a mark *or trade name* which is the common descriptive name of any article * * *." (Emphasis supplied.) Since incontestability is only conferred upon marks registered on the principal register, the mention of "trade name" in the above proviso may be thought to supply an inference that trade names are registrable as such on the principal register.[3] Section 23 of the Act, 15 U.S.C.A. § 1091, provides for a supplemental register upon which marks and names capable of distinguishing an applicant's goods or services and not registrable on the principal register may be registered. Such marks by Section 26, 15 U.S.C.A. § 1094, are not eligible for many of the procedural and substantive benefits conferred by the Act upon marks registered on the principal register. Section 32(1) of the Act, 15 U.S.C.A. § 1114(1), provides for a civil action by the registrant against one who infringes a registered mark, and Section 33(a), 15 U.S.C.A. § 1115(a), makes the certificate of registration of any mark registered on the principal register *prima facie* evidence in such an action of the registrant's exclusive right to use the mark in commerce on the specified goods or services, and *conclusive* evidence of that right if the mark has become incontestable under Section 15 of the Act, 15 U.S.C.A. § 1065. The conclusive evidentiary nature of the certificate of an incontestable mark is, however, subject to seven special defenses. Section 39, 15 U.S.C.A. § 1121, confers jurisdiction upon the federal courts of all actions arising under the Act regardless of the amount in controversy or the presence or lack of diversity of citizenship of the parties.

Section 44(b) of the Act, 15 U.S. C.A. § 1126(b) entitles persons who are nationals, domiciliaries, or doing business in any foreign country a party to conventions or treaties relating to trade-marks, trade names, or unfair competition to which the United States is a party, to the benefits of the Lanham Act so far as required to give effect to the conventions or treaties. Section 44(c, d, e, and f), 15 U. S.C.A. § 1126(c, d, e, and f), provide for the registration by persons identified by Section 44(b), 15 U.S.C.A. § 1126(b) of their marks on the principal and supplemental registers. Section 44(g), 15 U.S. C.A. § 1126(g) relates to *trade names* owned by such persons and states that they "shall be protected without the obligation of filing or registration whether or not they form parts of marks." Section 44(h), 15 U.S.C.A. § 1126(h) makes available to such persons the remedies specified in the Act for infringement of marks in protecting those persons against unfair competition. Section 44(i), 15 U.S.C.A. § 1126(i) confers upon United States citizens or residents the same benefits granted the persons identified by Section 44(b), 15 U.S.C.A. § 1126(b). Thus it is that a federal cause of action exists in behalf of a United States citizen or resident whose *trade name* is unfairly used in a manner affecting commerce whereby the remedies of the Lanham Act provided for the infringement of registered marks are made available in repressing such acts of unfair competition affecting unregistered trade-names.[4]

Trade-marks and trade names are distinct legal concepts within the ambit of the law of unfair competition. A trademark is fanciful and distinctive, arbitrary and unique.[5] A trade name may be descriptive, generic, geographic, common in a trade sense, personal, firm, or corporate.[6] A trade-mark's function is to identify and distinguish a product, whereas a

3. Derenberg, The Lanham Trade-Mark Act After One Year's Administration, B. N.A., p. 2, n. 5; Derenberg, The Patent Office as Guardian of the Public Interest, 14 Law and Contemp. Problems 288, 291, note 7.

4. Stauffer v. Exley, 9 Cir., 184 F.2d 962; Diggins, Federal and State Regulation of Trade-Marks, 14 Law and Contemp.

Problems 200, 208. See Lunsford, Trade-Marks and Unfair Competition—The Demise of Erie v. Tompkins, 40 T.M.R. 169.

5. 1 Harry D. Nims, Unfair Competition and Trade-Marks, (4th Ed.) Sections 202, 203.

6. 2 Callman, Unfair Competition and Trade-Marks (1945) Section 66.1;

trade name's function is to identify and distinguish a business.[7] Prior to the Lanham Act[8] the general requirement was that a trade-mark be affixed to the goods it was to identify and distinguish,[9] while it was unnecessary to attach a trade name to merchandise.[10] Trade-marks have traditionally been protected by actions for trade-mark infringement; trade names, by actions to restrain passing-off or unfair competition.[11] The distinction between trade-marks and trade names has been so well and so long established that we would not attribute to Congress the intention to dissolve the distinction merely on the strength of the possible inference contained in the fourth proviso of Section 15 of the Act. An inference is not a sufficient basis for any conclusion that Congress intended to merge well established and distinct common law concepts.

Section 44(i) of the Act, 15 U.S.C.A. § 1126(i), read in connection with Section 44(g), 15 U.S.C.A. § 1126(g) and Section 44(b), 15 U.S.C.A. § 1126(b) confers upon trade names increased protection from acts of unfair competition. The important section 2(f), 15 U.S.C.A. § 1052(f) would permit *inter alia* a trade name which has become distinctive of applicant's *goods* in commerce to be registered on the principal register upon a showing of adequate proof of distinctiveness. The instant application was not filed under the provisions of Section 2(f). Beyond Sections 44(i), (g), (b), and 2(f), we doubt that Congress intended by the Lanham Act to confer any new status upon trade names.[12] Certain it is that there is no provision in the Act permitting registration on the principal register of trade names as such.[13]

We turn then to a consideration of whether "Lyndale Farm" as used by the appellant is trade-mark use. Appellant relies upon the affixation of the placard "Lyndale Farm, Floydada, Texas" upon the cattle shipping crate to satisfy the Section 45 requirement relating to use of

Handler and Pickett, Trade-Marks and Trade Names, 30 Col.L.Rev. 168, at 169.

7. Robert, The New Trade-Mark Manual, 4; American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317; Derenberg, Trade Mark Protection and Unfair Trading, Section 17, p. 229; 1 Harry D. Nims, op. cit. supra note 5, at Section 185, p. 512; Amdur, Trade-Mark Law and Practice (Lanham Act Ed.) Section 4.

8. In Sec. 45 of the Act, 15 U.S.C.A. § 1127, it is stated: "For the purposes of this Act a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers *or the displays associated therewith* or on the tags or labels affixed thereto and the goods are sold or transported in commerce and (b) *on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce.*" See Robert, The New Trade-Mark Manual, pp. 15–16; Amdur, op. cit. supra note 7, at Section 13.

9. Amdur, op. cit. supra note 7, at Section 12, 2 Callman, op. cit. supra note 6, at Section 98.6.

10. Handler and Pickett, op. cit. supra note 6, at 759–760.

11. Kay Jewelry Co. v. Kapiloff, 204 Ga. 209, 49 S.E.2d 19.

12. Derenberg, op. cit. supra note 3, at p. 4: The Report of the Senate Committee on Patents (Senate Report No. 1333, May 14, 1946) published as part of the legislative history of the Lanham Act, U. S. Congressional Code Service, 79th Congress, 2nd Session, 1946, at p. 1274, in speaking of the basic purposes of trade-mark legislation in general, and the purposes of the Lanham Act in particular, consistently refers to "trade-marks" as the subject matter of the legislators' attention. Trade names are neither mentioned nor alluded to by inference. Thus, the Report cites as among the objectives of the Act, "to simplify trade-mark practice," and "to secure trade-mark owners in the goodwill which they have built up," and concludes that "national legislation along national lines securing to the owners of trade-marks in interstate commerce definite rights should be enacted and should be enacted now." The entire report is cast in terminology admitting of the conclusion that "trade-marks" in the technical, legal sense of the term were the subject matter of the legislative effort.

13. Robert, op. cit. supra note 7, at p. 62.

a mark in commerce, "placed in any manner on the goods or their containers * * * or on the tags or labels affixed thereto", and the Section 45 definition of a trade-mark, "name * * * used by a * * * merchant to identify his goods and distinguish them from those manufactured or sold by others." To come within the purview of the Lanham Act, a mark must not only be used as a trade-mark, but it also must be used as a trade-mark in commerce. The two definitions in Section 45 just cited do not establish a rule that affixation of a name to any container in which goods are or may be placed at any stage of the transportation or marketing process is trade-mark usage in commerce. Before "use in commerce" is considered, "trade-mark usage" must be established. Where affixation to goods, as distinguished from use on displays associated with the goods, is relied upon to establish trade-mark use, the affixation required is not satisfied by affixation to a container whose nature in relation to the goods transported is such that its use in the marketing process is ended when the transportation phase itself is at an end. This holding is not contra to our decision in Barron-Gray Packing Co. v. Bruce's Juices, Inc., 162 F.2d 217, 34 C.C.P.A., Patents, 1106, where it was held that a mark affixed to the cartons in which small cans of fruit juice were packed was a sufficient affixation to the goods sought to be identified by the mark where the juices were sold to wholesale and retail distributors by the carton, and it was a matter of common knowledge that such goods are purchased by the case or carton. Cattle are not, to our knowledge, marketed in crates, nor does it affirmatively appear from the record that the name "Lyndale Farm" would come to the attention of wholesale or retail purchasers as identifying the cattle being purchased. As the Restatement of the Law of Torts puts it in Comment b to Section 718: "The designation is not affixed however, under the rule stated in this Section,[14] if it is attached only to the container, case or wrapper in which the goods are placed for purposes of transportation or storage only."[15] The appellant's application and exhibit clearly describe and depict only the use of "Lyndale Farm" on a case or container in which the cattle are placed for purposes of transportation. Furthermore, the inference is created by the addition of the address "Floydada, Texas" to the placard that the use here involved does not so much distinguish appellant's cattle as it identifies appellant as the source of the shipment while the crate and its contents are in transit. That is trade name usage as distinguished from trade-mark usage. We think the denial of registration of "Lyndale Farm" on the principal register because of failure to show trade-mark usage is, on the record before us, well founded.

We do not pass upon the denial of registration on the additional ground that "Lyndale Farm" is primarily geographically descriptive, as it is unnecessary to the disposition of the case. Such action, it is to be observed, should not be construed as approval or disapproval of the rejection below on that basis.

We find no error in the refusal to register appellant's mark on the principal register on the ground herein discussed in full. The decision appealed from is, therefore, affirmed.

Affirmed.

14. "Sec. 718. Affixation. A designation is not a trade-mark unless as a general practice it is affixed to the goods which it denominates."

15. The essential requirement that the mark be affixed to the goods or container in which the goods are sold so as to convey to the purchaser knowledge of the origin or source of the goods. Rice-Stix Dry Goods v. Schwarzenbach-Huber Co., 47 App.D.C. 249, is not changed, we think, by the Lanham Act, though in addition to affixation to the goods or their containers, trade-mark use may now, by virtue of the Lanham Act, be achieved where the mark is placed on displays associated with the goods as they are sold.