43 C.C.P.A.(Patents)

MINNESOTA MINING & MFG. CO., Appellant,

v.

MINNESOTA LINSEED OIL PAINT CO. (now by change of name Minnesota Paints, Inc.), Appellee.

MINNESOTA MINING & MFG. CO., Appellant,

v.

MINNESOTA LINSEED OIL PAINT CO. (now by change of name Minnesota Paints, Inc.), Appellee.

MINNESOTA LINSEED OIL PAINT CO. (now by change of name Minnesota Paints, Inc.), Appellant,

v.

MINNESOTA MINING & MFG. CO., Appellee.

Patent Appeals Nos. 6111–6113.

United States Court of Customs and Patent Appeals.
Jan. 20, 1956.

Harold J. Kinney and Mark W. Gehan, St. Paul, Minn., Carpenter, Abbott, Coulter & Kinney, St. Paul, Minn., of counsel for Minnesota Mining & Mfg. Co.

Arthur S. Caine, Minneapolis, Minn., for Minnesota Linseed Oil Paint Co. (now by change of name Minnesota Paints, Inc.).

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges.

O'CONNELL, Acting Chief Judge.

These are three appeals from the decisions of the Commissioner of Patents acting through the Examiner-in-Chief. One of them is a cancelation proceeding, No. 5463, 98 U.S.P.Q. 74; the other two

are opposition proceedings, No. 27,956, 98 U.S.P.Q. 76, and No. 28,468, 98 U.S.P.Q. 72. The issues in all three cases overlap each other to a great extent and were determined in the Patent Office on the same date, July 1, 1953. All the proceedings were based upon the same record and exhibits, and while the three decisions were rendered by the Commissioner of Patents, and separate briefs have been filed here in each case, we shall dispose of the appeals in a single opinion.[1]

### Appeal No. 6111

In this case appellant-applicant, Minnesota Mining, appeals from the decision of the Examiner-in-Chief, acting for the Commissioner of Patents, 98 U.S.P.Q. 76, affirming the action of the Examiner of Interferences sustaining the opposition No. 27,956 brought by Minnesota Paints against Minnesota Mining to prevent its "re-registration" on the principal register of the word "Minnesota," standing alone and nowise comprising any additional words or insignia, for use as a trade-mark on coated abrasives, such as sandpaper. Both parties took testimony, filed briefs, and were represented at the hearing.

The application for "re-registration" filed by Minnesota Mining alleged ownership of registration No. 346,318 for "Minnesota" issued May 18, 1937 under the Act of 1920 [automatically renewed by law to May 18, 1957 on the supplemental register][2] for use upon coated abrasives, including abrasive, detergent, and polishing materials.

The specimen of the mark originally submitted with the application for the re-registration here in issue discloses a composite mark consisting of the words "Minnesota Buffing Paper" in combination with the notation "A 3–M Product" a monogram, and the name and address of the applicant, Minnesota Mining. The latter however subsequently filed a so-called "Substitute Declaration" and included therewith, as a specimen of the mark relied upon, the term "Minnesota," standing alone completely devoid of any other words or insignia and as defined by registration No. 346,318.

Minnesota Mining based its claimed right to "re-registration" of the mark in issue under the provision of section 2(f) of the same act which, so far as pertinent, provides:

"(f) Except as expressly excluded in paragraphs * * * of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in

---

1. On June 28, 1955 a decision determining the issues presented by the appeals hereinbefore enumerated was rendered by this court and, pursuant to the practice prevailing here, the decision was withheld from formal publication, pending the exercise of the rights of the parties in interest under the rules of the court to petition for rehearing. Counsel for the respective parties in the meantime filed a motion for an extension of time within which to file said petition for rehearing and modification of the decision rendered. The time was accordingly extended to September 1, 1955. The petitions of counsel for the rehearing subsequently filed with leave of the court were granted October 11, 1955 for the purpose of reconsideration only. Thereafter the cause was re-examined, the original opinion of June 28, 1955 was recalled, and the following opinion is substituted for it.

2. The supplemental register is a continuation of the register previously maintained by the commissioner under the Act of 1920. In re Blue Lake Producers Co-op., 194 F.2d 126, 39 C.C.P.A., Patents 805. [See Lanham Trade-Mark Act, 15 U.S.C.A. § 1051 et seq.] Section 46(a) repealed the Act of March 19, 1920, U.S.C., Title 15, secs. 121–128, inclusive, and supplanted the same by section 46(b), which, among other things, provided:

"Registrations now existing under the Act of March 19, 1920, shall expire six months after the effective date of this Act, or twenty years from the dates of their registrations, whichever date is later. * * *"

commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration."

Minnesota Paint in its notice of opposition alleged prior and continuous use of the notation "Minnesota" not only as the dominant part of its corporate name but also as a trade-mark registered in 1913 under the ten-year proviso of the Act of 1905, 33 Stat. 724, for paints and linseed oil and renewed to February 25, 1953. Minnesota Paint further alleged therein that it had thus established protective rights in the use of the term "Minnesota" in respect to linseed oil and paints made therewith, and that confusion would result from the application of that term by others to an abrasive or related product which a painter or householder might buy or use when preparing a surface for the application of paint, such as sandpaper.

The ground of opposition raised by Minnesota Paint comes within purview of section 2 and includes the confusion in trade clause of section 2(d) of the Act of 1946, which provides:

"Sec. 2. No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*

"(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers: \* \* \*."

The tribunals of the Patent Office in their disposition of the case concurred in holding that the record clearly established that as between the parties, Minnesota Paint, the opposer in the instant case, was the prior user by many years

of the notation "Minnesota" as alleged in its notice of opposition; and therefore the only remaining issue to be determined by them was that raised by the contention of Minnesota Mining that sand paper is a product nowise related to paint or its application, and, because of the wide differences in their physical characteristics and functions there would be no confusion in trade since purchasers would not be likely to attribute a common source of origin to sand paper and paint.

The tribunals of the Patent Office however rejected the arguments advanced by Minnesota Mining and agreed that the sale of sand paper and paint under the same mark would be very likely to cause confusion in trade regardless of the differences between paint and sand paper. In support of their position the Patent Office pointed out that the respective goods are sold through the same channels, namely paint and hardware stores, and to the same class of purchasers for a common or conjoint use in refinishing surfaces to be painted. The examiner further refuted the arguments of Minnesota Mining on the point in issue by quoting from its own advertisements, comprising applicant's Exhibit 12, as follows:

"Suggestive selling is probably one of the best build-ups for any Retail Hardware Store.

\* \* \* \* \* \*

"Have your sales people suggest related items; for example, if the customer asks for turpentine, paint, brushes, putty or putty knife, etc., always suggest \* \* \* Sandpaper and Emery Cloth.

"When Customers Want to
Paint Furniture
Increase Your Sales by Selling
Them Sandpaper

\* \* \* \* \* \*

In addition to
Paint, Lacquer, Varnish
and Enamel.

"Sandpaper should be used to smooth and level the surface \* \* \*

Between each coat of paint lacquer, varnish or enamel."

The Examiner-in-Chief rightly concluded in his decision that it is also a matter of common knowledge that paint manufacturers and distributors recommend that surfaces be cleaned and smoothed by means of sandpaper before paint is applied thereto; and that the respective goods, paint and sandpaper, are generally sold to the same class of purchasers through paint and hardware stores.

Additional points raised by Minnesota Mining in respect to the instant case and in the companion proceedings were discussed and properly decided by the Commissioner of Patents. His decision in appeal No. 6111 reported below in 98 U.S. P.Q. 76 is accordingly affirmed.

### Appeal No. 6112

This is an appeal by Minnesota Mining from the decision of the Examiner in Chief acting for the Commissioner of Patents and affirming the decision of the Examiner of Interferences, 98 U.S.P.Q. 72, dismissing the opposition No. 28,468 brought by Minnesota Mining against the registration of the single word "Minnesota" as defined in application serial No. 539,596 dated July 5, 1947 and filed under section 2(f) of the Act of 1946 by Minnesota Paint as a trade-mark for "ready mixed paints for general purposes, and wood stains."

There is no question here that Minnesota Paint was the prior user by many years of the term "Minnesota" not only as the dominant part of its trade-mark since 1888 but also as the dominant part of its trade name "Minnesota Paint" since 1870, to designate the state wherein its goods were manufactured and from which they were distributed.

Opposer Minnesota Mining in its notice of opposition pleaded ownership and continued use since September 18, 1906 of one or more of the following registrations containing the term "Minnesota," either "alone or in combination with other words," as a trade-mark for the coated abrasive products which it manufactures in Minnesota and sells in interstate commerce; namely, registrations No. 56,397, No. 353,500, No. 351,358, and No. 346,-318.

█ Of the registrations thus enumerated and relied upon by Minnesota Mining, only the last, No. 346,318, establishes the term "Minnesota," standing alone, for use as a trade-mark. That registration was issued May 18, 1937, "for abrasive cloth and paper and buffing cloth and paper in Class 4, abrasive, detergent, and polishing materials" under the Act of March 19, 1920. Hence on the effective date of the Act of 1946, namely July 5, 1947, Minnesota Mining's mark, No. 346,318 had acquired the status of a registered mark on the supplemental register automatically continued under the law and maintained by the Commissioner of Patents.[3]

With respect to the additional marks hereinbefore described and relied upon by appellant, Minnesota Mining, the Examiner in Chief made the accurate observation, based upon the specimens, the testimony, and applications of record; that registration No. 56,397 is the general company brand of Minnesota Mining, which is likewise included with slight variation in the allied registrations No. 351,358, No. 353,500, and No. 351,358 to form a series of composite marks which in general disclose the term "Minnesota" used, not alone, but solely as part of the corporate name, together with the address of Minnesota Mining & Manufacturing Company "printed inside the space between two concentric circles, together with a black diamond located within the inner circle and the notation "3 M Co" written in white as a cross, with the letter "M" common to the horizontal and vertical rows thereof, within the black diamond."

The record discloses in this case that Minnesota Mining, the opposer, was originally organized July 15, 1902 as a corporation and alleged that the business of

---

3. Secs. 46(a), 46(b), as quoted in footnote 1, Appeal No. 6111, Opposition No. 27,956, supra.

said corporation commenced promptly after organization and comprised in part the mining, crushing and marketing of abrasive grains and the manufacture of a variety of abrasive products; that prior to February 1, 1906, Minnesota Mining adopted and since has continuously used the term "Minnesota" either alone or in combination with other words, as a trade-mark for the coated abrasive products which it manufactures and sells in interstate commerce; that Minnesota Linseed Oil Paint Co. has urged in an opposition, No. 27,956 [Appeal No. 6111] that Minnesota Mining's use of the term "Minnesota" on its coated abrasive products is likely to result in confusion in trade, although use of that term has been made by Minnesota Mining since at least 1906 on coated abrasives, and for many years with the knowledge and acquiescence of Minnesota Paint Company; that the term or trade-mark "Minnesota" used on paint "is primarily geographically descriptive of paint made with linseed oil produced in the state of Minnesota;" and that "Minnesota" is not, therefore, registrable for paint upon the Principal Register established by the Act of 1946.

█ Minnesota Mining further alleged in its notice of opposition herein:

That the term "Minnesota" as applied to linseed oil and/or paint products made therewith is incapable of exclusive appropriation by one manufacturer, viz. Minnesota Linseed Oil Paint Company, applicant herein.

That the term "Minnesota" is not distinctive of applicant's linseed oil or paint made therewith, but is on the contrary a term generally and commonly associated in the minds of the public with linseed oil produced in Minnesota or made from Minnesota flax; that that term should remain open for use by the public to describe such products, and paints made therewith, and not be exclusively appropriated by applicant, one of the smaller manufacturers whose principal place of business is located at Minneapolis, Minnesota, which is the principal center in the nation for the production of linseed oil.

The statutory basis for the opposition in the instant case, No. 28,468 appeal No. 6112, like that relied upon by the opposer and quoted, so far as pertinent, in appeal No. 6111, is to be found in section 2, and in particular in the provisions of paragraphs 2(d), 2(e) and 2(f) of the Act of 1946. Minnesota Mining's basis for the instant opposition was thus condensed, however, in the decision of the Examiner in Chief:

(1) that the notation "Minnesota" as applied to paints possesses a generically descriptive significance, and therefore cannot become distinctive of applicant's goods and

(2) that clause of section 2(d) of the Act which relates to likelihood of confusion or deception or mistake of purchasers as to the origin of the goods.

Sections 2 and 2(e) provide, among other things, that "No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it * * * (e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, or (2) when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them."

The import of the argument advanced by Minnesota Mining as hereinbefore described is to the effect that the term "Minnesota" is descriptive of the product or particular type of linseed oil manufactured from flax seeds grown in the State of Minnesota, as distinguished from similar seeds grown elsewhere; and that the notation "Minnesota" is likewise descriptive—"primarily geographically descriptive"—of paints made therewith.

Minnesota Mining likewise advanced the argument in similar form and emphasis in the record of the companion appeal

No. 6113, Cancelation No. 5463, the decision by the tribunals of the Patent Office in which case was incorporated in the opposition proceedings there by the examiner, who thus rejected, with the approval of the Examiner in Chief, the argument again advanced and repeated on appeal here in the instant opposition, No. 28,-468:

In the decision in cancelation 5463, which the examiner of interferences has incorporated herein, the examiner pointed out that the petitioner there (opposer here) in effect argued that to purchasers the notation "Minnesota" as applied to linseed oil signified only a particular type or quality of linseed oil produced from the seeds of flax indigenous to the State of Minnesota, and that as applied to paints it would signify only paints made from such oil. The examiner held, however, that *the difficulty with this argument is that the record fails to disclose a single instance where the notation "Minnesota" has ever been used in the trade as a designation for a particular type of linseed oil produced from the seeds of flax common to the State of Minnesota as distinguished from similar goods produced from the seed of flax grown elsewhere. The examiner stated that he was not persuaded on the record presented that the notation "Minnesota" was generically descriptive of either linseed oil or paints made therewith.* [Emphasis added.]

We agree with that finding by the tribunals of the Patent Office.

Appellee Minnesota Paint in its answer to the appellant's notice of opposition admitted that use of the term "Minnesota" by Minnesota Mining on its coated abrasives (sandpaper) is likely to result in confusion in trade, but denied not only that Minnesota Mining had used that trade-mark on abrasives since 1906, but also that it had not so used it at any time prior to 1933. As pointed out by appellee—

The word Minnesota, standing alone, first appeared, applied to specific products, according to Opposer's certificate of registration 346,318, under the 1920 Act, as being used for abrasive cloth and paper and buffing cloth and paper, which are fancy names for sandpaper, and the registration states that "the trade mark has been continuously used and applied to said goods in the undersigned's business *since August, 1933.*" [Italics quoted.]

The tribunals of the Patent Office further held in the disposition of certain contentions advanced by the opposer Minnesota Mining that according to the record Minnesota Mining was without right to challenge applicant's right to registration, since it has not been made to appear, nor does the opposer contend, that it deals in the particular goods [linseed oil and paint derived therefrom] of which it asserts the notation "Minnesota" is generically descriptive. We agree with that finding by the Patent Office. Furthermore, with respect to opposer's stipulation and its legal effect, it was noted in the printed report of the commissioner's decision, 98 U.S.P.Q. 73–74.

Most of the [opposer's] products are sold with the term "Minnesota" used as a part of the corporate name, either as a signature or as a part of the general company brand which was used for so long.

\* \* \* \* \* \*

In view of the above mentioned stipulation it is clear that opposer is basing its argument for prior use of the term "Minnesota" on the fact that it was used as part of the full corporate name either as a signature or as part of the General Corporate Brand as shown in opposer's registrations No. 56,397, No. 353,500 and No. 346,318. It is well established, however, that the use of a corporate name on the goods is not a trademark use of any given part of that

name. Standard Brands Incorporated v. Isenberg, 625 O.G. 1156, 82 U.S.P.Q. 106; Quaker City Flour Mills Co. v. Quaker Oats Co., 43 App. D.C. 260, 1915 C.D. 113.[4]

While we agree with the views thus expressed by the Patent Office and for the reasons stated in their concurring decisions, we are of the opinion, for reasons hereinafter set forth, that registration of the mark involved in this proceeding should have been refused.

## Appeal No. 6113

This is an appeal by Minnesota Paint from the decision of the Examiner in Chief affirming the action of the Examiner of Interferences in sustaining the petition filed by Minnesota Mining, 98 U.S.P.Q. 74, to cancel the registration of the trade-mark "Minnesota" as applied to "Paints, ready-mixed paints for interior and exterior use, and wood stains."

The registration sought to be canceled consists of a geographically descriptive term, "Minnesota," renewed to February 25, 1953, which was issued to Minnesota Paint February 25, 1913, on an application filed October 26, 1912, under the ten year proviso of the Act of 1905 which, so far as pertinent, provided:

> "That nothing herein shall prevent the registration of any [descriptive] mark used by the applicant * * * in commerce * * * among the several States * * * *which was in actual and exclusive use as a trade-mark of the applicant* * * * *for ten years next preceding February 20, 1905:* (Italics supplied).

Minnesota Mining alleged in its petition that its principal place of business is now located, and has been since its inception in 1902, in the State of Minnesota, and that for many years it had continuously and extensively used the term "Minnesota" either singly or in combination with other words and insignia, as a trade-mark on a variety of products which it had manufactured within the state.

The record discloses and the tribunals of the Patent Office concurrently held in opposition No. 27,956, 98 U.S.P.Q. 76, that the sand paper produced by petitioner Minnesota Mining pertains to the same general classification of related merchandise as the paint of Minnesota Paint. The same tribunals also held, however, that the only use made by the respondent herein Minnesota Paint of the term "Minnesota" prior to the year 1912, and during the critical ten-year period here involved, was not a trade-mark use, but use by Minnesota Paint solely as part of its corporate name; that such use of a trade name does not constitute use thereof as a trade-mark; that Minnesota Mining had for many years employed and had the right to employ the notation "Minnesota" in its primary sense for the purpose of describing the geographical location of the coated abrasives, including the sand paper it manufactures; and that the testimony of Wakefield and Hall, witnesses called by Minnesota Paint, conclusively established that registration of the word "Minnesota" for the described use to Minnesota Paint was therefore improperly issued to that corporation and should be accordingly canceled.

The Examiner in Chief in his reported decision in appeal No. 6113 added this significant statement:

> Appellant admits frankly on the record that during the ten-year proviso period, the word "Minnesota" was used by it on the labels attached to the goods only as a part of the corporate name "Minnesota Linseed Oil Paint Company", * * * and that never at any time during this period was the contention made that the word "Minnesota" on the labels was not printed as a part of the corporate name * * *.

The Examiner in Chief rightly pointed out also that the record failed to estab-

---

4. See our decision in companion appeal No. 6113 for additional authorities and the explanations thereof.

lish that the public used "Minnesota" as a trade-mark and not merely as a short cut in the use of its corporate name, and that advertising use and documentary use shown by the record with use of the notation apart from the goods, does not constitute use of the term as a trade-mark.

The Examiner of Interferences in support of his position properly cited the decisions of Quaker City Flour Mills Co. v. Quaker Oats Co., 43 App.D.C. 260, 1915 C.D. 113, and other cases too numerous to mention here, all of which were cited with approval and explained in the commissioner's reported decision appealed from. See also Whitman & Son, Inc. v. Christy Cosmetics, Inc., 140 F.2d 1001, 31 C.C.P.A., Patents, 915; In re Lyndale Farm, 186 F.2d 723, 38 C.C.P.A., Patents, 825.

The Whitman case just cited above fully explains the decision and principle of trade-mark law defined by the Quaker City case and applied such law in rejecting an applicant's effort to register but one word of a number of words comprising the composite trade-mark actually used in commerce by the applicant. In the case of In re Lyndale Farm, supra, the court construing the Act of 1946 pointed out the distinction under the law between trade names and trade-marks and their respective functions and rejected the registration of an applicant's mark which had been used merely as a trade name and nowise as a trade-mark.

Where it is established by a proper showing, as in the case at bar, that the action of the commissioner in registering a mark was invoked by means of erroneous statements, the resulting registration, under section 2 of the Act of 1905, created no right whatever in the applicant, and the involved mark will be canceled and removed from the register under section 14 of the Act of 1946 on petition of any firm or corporation believing itself to be damaged thereby. Academy of Motion Picture Arts and Scenes v. Academy Award Products, Inc., 89 U.S.P.Q. 451; Van Alstyne & Co. v. Boutwell Milling & Grain Co., 43 App. D.C. 530.

In the case last cited, the court on petition of a party believing itself to be damaged by such a registration, canceled the applicant's mark. Irrespective of the questions of first use, a registered mark does not become a valid mark and entitled to a place on the register of trade-marks by reason of its erroneous registration. Asbestone Co. v. Philip Carey Mfg. Co., 41 App.D.C. 507; California Piece Dye Works v. California Hand Prints, Inc., 159 F.2d 871, 34 C.C. P.A., Patents, 907.

More specifically, the tribunals of the Patent Office in sustaining appellee's petition for cancelation acted on the basic principle that appellant's registration No. 90,456 had been improperly granted by the Commissioner of Patents in reliance upon an erroneous statement made by appellant's president that the term "Minnesota" had been in actual use as a trade-mark by the applicant "for ten years next preceding February 20, 1905," whereas the evidence established, beyond any reasonable doubt, that appellant's use of the contested term "Minnesota" was not its actual and exclusive use as a trade-mark but its actual use as part of Minnesota Paint's corporate name.

The decision appealed from noted with approval the finding of the examiner to the effect that the testimony and the law applicable to the undisputed facts established by the record entitled appellee to the relief which it had sought in its petition for cancelation. We concur in this conclusion.

For the reasons stated, the decision of the Commissioner of Patents in appeal No. 6113, 98 U.S.P.Q. 74, is affirmed.

The respective parties rest their position in these three cases upon the unqualified basis that their business is located and operated in the State of Minnesota and that their goods are either grown, mined, manufactured, processed, sold, or distributed there. The term "Minnesota" as thus used by them from

the outset is therefore primarily geographic under the provisions of section 2(e) of the Act of 1946.

From the foregoing it will be seen that, as the result of the dismissal of Minnesota Mining's opposition in appeal No. 6112, the mark owned by Minnesota Paint and involved in that proceeding stands eligible for registration on the principal register.

 Public policy is involved here and under the law and in the public interest it was not only the right but also the duty of the commissioner to determine, *ex parte*, and irrespective of the contentions of the parties, whether the primary geographical term "Minnesota" is entitled to registration on the principal register under the provisions of law. Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 127 F.2d 318, 29 C.C.P.A., Patents, 1024; Columbia Broadcasting System, Inc. v. Technicolor Motion Picture Corp., 166 F.2d 941, 35 C.C.P.A., Patents, 1019; Tidy House Paper Products, Inc. v. Tidy House Products Co., 189 F.2d 280, 38 C.C.P.A., Patents, 1099; Strey v. Devine's, Inc., 7 Cir., 217 F.2d 187; The Coschocton Glove Co. v. Buckeye Glove Co., 90 F.2d 660, 24 C.C.P.A., Patents, 1338.

 Upon careful consideration of these cases we are of the opinion that, in view of the obviously geographical nature of the word "Minnesota" and the fact that it has been widely applied to various goods by both of the parties involved in these proceedings, a mere affidavit by an applicant for registration asserting a conclusion as to exclusive use of the word as a trade-mark is not a sufficient compliance with the provision of section 2(f) of the Trade-Mark Act of 1946, which states that the commissioner may accept, as *prima facie* evidence of distinctiveness, *proof* of substantially exclusive and continuous use of the mark involved for the five years next preceding the date of the filing of the application.

The registration of the word "Minnesota" on the principal register on the basis of the application involved in appeal No. 6112, therefore, would not be proper on the basis of the present record, and the decision in that appeal is accordingly reversed and the case is remanded for further consideration of the question of registrability in accordance with the views above set forth.

The decisions of the commissioner in appeal Nos. 6111 and 6113 are affirmed.

JOHNSON, Judge, concurs in the conclusion as to appeal Nos. 6111 and 6113 and dissents as to appeal No. 6112.

GARRETT, C. J., participated in the hearing and original opinion (which was recalled) in this case, but resigned on September 15, 1955, and, therefore, did not participate in the instant opinion.