COIT DRAPERY CLEANERS, INC., a California Corporation, and Louis J. Kearn, an Individual, Plaintiffs,

v.

COIT DRAPERY CLEANERS OF NEW YORK, INC., a New York Corporation, et al., Defendants.

No. 75 C 2158.

United States District Court, E. D. New York.

June 2, 1976.

Kenyon & Kenyon Reilly Carr & Chapin, New York City, for plaintiffs; Paul Lempel, New York City, of counsel.

Geraldine D. Santangelo, Brooklyn, N. Y., for defendants.

## MEMORANDUM OF DECISION

MISHLER, Chief Judge.

Plaintiff, Coit Drapery Cleaners, Inc., franchisor and owner of the trade name Coit Drapery Cleaners and the registered service marks "Coit" and "Tower Design,"[1] moves to enjoin the defendant franchisee from using the name and marks,[2] claiming that the defendants have breached the franchise agreement in failing to pay franchise fees due under the agreement.

The material facts which are conceded or not in dispute show the following:

On August 30, 1968, Coit Drapery Cleaners, Inc. (hereinafter, "Coit Cal.") filed applications for registration of the service marks described as "Tower Design" and "Coit" and stated therein that the said service marks were first in use in 1957 and in commerce in 1962. On July 22, 1969, Coit Cal. was granted a trade mark registration No. 873,637 for its "Tower Design" and on September 30, 1969, was granted registration No. 877,943 for "Coit" to be used in connection with services relating to "cleaning and treating draperies and fabric window coverings."

Coit Cal. is a California corporation, incorporated December 30, 1966. Prior to that time, plaintiff Louis J. Kearn operated a drapery cleaning business in California and used the subject marks in connection with his business. Prior to April, 1965, Mr. Kearn entered into negotiations with George Brauch, concerning a franchise which included the use of the service marks. At that time, Brauch was the sole stockholder of Gem Cleaners, Inc. (hereinafter, "Gem"). On May 18, 1965, Brauch organized Coit Draperies of New York, Inc. Four days later, and on May 22, 1965, Brauch, as president of Gem, executed a franchise agreement with Kearn for the exclusive use of the name Coit Drapery Cleaners for a period of ten years in thirteen states in New England and along the Eastern seaboard, as far south as, and including, Virginia.[3]

---

1. The individual plaintiff, Louis J. Kearn, is president of the franchisor corporation. He originally owned the trade name and marks in his individual name and conveyed the same to the corporation organized on December 30, 1966.

2. A service mark is a trademark for services. Section 45 of the Lanham Act (15 U.S.C. § 1127) defines trademark and service mark as follows:

   The term "trade-mark" includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others.

   The term "service mark" means a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others. Titles, character names and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor.

   In In re Lyndale Farm, 186 F.2d 723, 726, 38 C.C.P.A. 825 (1951), the court described the difference between trademark and tradename as follows:

   Trade-marks and trade names are distinct legal concepts within the ambit of the law of unfair competition. A trade mark is fanciful and distinctive, arbitrary and unique. A trade name may be descriptive, generic, geographic, common in a trade sense, personal, firm, or corporate.

   A trade-mark's function is to identify and distinguish a product, whereas a trade name's function is to identify and distinguish a business . . . Trade-marks have traditionally been protected by actions for trademark infringement; trade names, by actions to restrain passing-off or unfair competition.

3. Gem was also granted the authority to grant "sub-franchises."

In October, 1970, defendant Coit Drapery Cleaners of New York, Inc. (hereinafter, "Coit N.Y.") located at 105 Babylon Turnpike, Roosevelt, New York, sold its drapery and cleaning business, including fixtures, equipment and good will to Murjers Drapery Specialties Inc. (hereinafter, "Murjers"). The bill of sale did not convey the trade name Coit.[4] In addition to acquiring the assets of the drapery cleaning business at 105 Babylon Turnpike, the individual defendants also acquired the capital stock of Coit N.Y.[5] Coit N.Y. entered into a franchise agreement with Coit Cal. on March 25, 1971, under which Coit Cal. granted Coit N.Y. the exclusive right to use the name "Coit Drapery Cleaners" in New York City and in Nassau and Suffolk Counties for a period of 60 months (and an option to extend the term for a period of ten (10) years), conditioned upon payment of a franchise fee based on gross income derived from the drapery and window covering business. Coit N.Y. paid Coit Cal. the sum of $2,750 pursuant to the terms of the contract for a period subsequent to March 25, 1971. Coit Cal. claims that Coit N.Y. is indebted to it in the sum of at least $10,550 as of March 31, 1975. Defendants' answer denies the allegations of the complaint (Complaint ¶ 20) but Bagdassarian's affidavit (verified February 4, 1976) makes it clear that Coit N.Y. has made no payments as required by the terms of the contract since 1975. The withholding of monies due is explained in ten affirmative defenses incorporated in the answer, which allege that since Coit N.Y. was incorporated prior to the registration of the name and mark, it had the right to use both the name and the mark.[6]

Kearn used the trade name "Coit" and the "Tower Design" since 1957. On or soon after January 1, 1967, he conveyed his right, title and interest in and to the name and the mark to Coit Cal. Coit Cal. franchised more than sixty franchisees throughout the United States and foreign countries, licensing the use of the name and mark during the franchise period in connection with quality drapery cleaning. Coit Cal. conducted training of franchised personnel in its method and system of cleaning draperies. Kearn and Coit Cal. have spent in excess of $4,000,000 in advertising in order to acquaint the general public with the services offered under the name and mark. In 1974, Coit Cal. spent $700,000 advertising its services. The franchise agreement, dated March 25, 1971, was terminated as of April 10, 1975 by plaintiff's letter dated March 10, 1975, for Coit N.Y.'s failure to pay franchise fees due. Defendants continue to use the name Coit and the Tower Design in connection with its drapery cleaning business. Defendants represent themselves to be part of the "World's Largest

4. The schedule of the equipment and fixtures annexed to the contract of sale was on the stationery of Coit N.Y. which had "Coit" (in script) one and one-fourth inches high followed by "Drapery Cleaners." The "Tower Design" was placed in the middle of the name preceded by "America's Largest." Printed at the bottom is a list of the following cities: "New York-San Francisco - Chicago - Houston - Miami - Honolulu-Vancouver, B. C."

5. Apparently, Brauch (and Cherlow) used Murjers Drapery Cleaners, Inc. as an additional corporate entity in the conduct of the drapery cleaning business at 105 Babylon Turnpike. The assets of this corporate entity was conveyed to Murjers Drapery Specialties, Inc. (controlled by Bagdassarian and Hederian) on December 7, 1970.

6. Seven affirmative defenses state variations of the claim. They allege consent by Coit Cal. to use the corporate name and waiver to contest Coit N.Y.'s right to use the name. The seventh affirmative defense alleges fraud in the inducement to enter into the franchise agreement (general claims are stated, i. e., that Coit Cal. "would be beneficial to defendant-corporation getting additional franchises" and would advertise in national magazines. The general allegations of fraud are insufficient as a matter of law. F.R.Civ.P. 9(b). The eighth affirmative defense claims the right to telephone numbers listed to Coit N.Y. The ninth and tenth affirmative defenses seek dismissal against the individual plaintiff Louis J. Kearn; these defenses appear to have merit. The answer also contains a counterclaim for breach of contract in that Coit Cal. failed to advertise and failed to train defendants' personnel as provided under the franchise agreement.

Drapery Cleaners—Since 1947" in the yellow pages of telephone directories.[7]

■ The Lanham Act (15 U.S.C. § 1051 *et seq.*) confers procedural advantages on the registrant in the protection of the common law substantive right of trademark ownership, *Clairol Inc. v. Gillette Co.*, 389 F.2d 264 (2d Cir. 1968). Thus, the registration is ". . . prima facie evidence of registrant's exclusive right to use the registered mark," 15 U.S.C. § 1115(a). The burden of going forward thereupon shifts to the individual asserting a right to the use of the mark. *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3 (5th Cir. 1974).

■ Defendants assert a right to use the mark through the incorporation of Coit N.Y. The right to a trademark (or service mark) is acquired through use in relation to a product (or service). Incorporation did not give defendants a right to use either the name Coit Drapery Cleaners or the mark Coit as against the property right of Coit Cal. *Panitz v. University Clothes, Inc.*, 59 U.S.App.D.C. 299, 40 F.2d 811 (D.C.Cir. 1930); *Colonial Radio Corp. v. Colonial Television Corp.*, 78 F.Supp. 546 (S.D.N.Y. 1948); *Brooks Bros. v. Brooks Clothing of Cal., Ltd.*, 60 F.Supp. 442 (S.D.Cal.1945), aff'd., 158 F.2d 798 (9th Cir.), *cert. denied*, 331 U.S. 824, 67 S.Ct. 1315, 91 L.Ed. 1840 (1947); 1 Nims, Unfair Competition and Trademark, § 84 at 252. The right to use the corporate name is limited to corporate business purposes, *Jerrico, Inc. v. Jerry's Inc.*, 376 F.Supp. 1079 (S.D.Fla.1974).

■ The right to the use of the name Coit and the mark Tower Design with relation to cleaning and treating draperies and fabric window coverings was acquired by Coit N.Y. through the franchise agreement. The termination of the agreement terminated its right to use the name and mark, *Costandi v. AAMCO Automatic Transmissions, Inc.*, 456 F.2d 941 (9th Cir. 1972);

*Cle-Ware Rayco, Inc., v. Perlstein*, 401 F.Supp. 1231 (S.D.N.Y.1975).

■ Plaintiffs have shown likelihood of success and that withholding injunctive relief would cause irreparable injury to them, *Bose Corp. v. Linear Designs Labs., Inc.*, 467 F.2d 304 (2d Cir. 1974); *Clairol Inc. v. Gillette Co., supra; Societe Comptoir de l' Industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, Inc.*, 299 F.2d 33 (2d Cir. 1962). It is true that defendants will also be severely damaged by the grant of injunctive relief. However defendants' continued use of the name and mark, and continued misrepresentation that it is still part of the franchisor's organization, will cause further confusion in the public mind, *W. E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868 (2d Cir. 1966).

Plaintiffs' motion is granted. Settle order on two (2) days notice (five (5) days by ordinary mail). The order shall provide that defendants may continue using the telephone numbers listed in the name of Coit for a period of sixty (60) days from the entry of the order, advising all customers in the meantime that they are no longer associated with Coit Cal. and further advising such customers of a new telephone number assigned to them. On the sixtieth day, defendants shall transfer all telephone numbers listed in the name of Coit, Coit Draperies, Coit Drapery Cleaners, Inc., or any similar name to any firm, corporation or individual designated by Coit Cal. in accordance with the franchise agreement.

Undertaking is fixed in the amount of Fifty Thousand dollars ($50,000) pursuant to F.R.Civ.P. 65(c).

This memorandum of decision contains findings of fact and conclusions of law as required under F.R.Civ.P. 52(a).

---

**7.** Paragraph 7(c) of the agreement requires the franchise to cease using the name and mark on default in paying franchise fees and requires the franchisee ". . . to assign and trans- fer all telephone numbers and listings theretofore used in connection with said 'Coit Drapery Cleaning' business to any person, firm, or corporation designated by [Coit Cal.] . . . ."