DIAL–A–MATTRESS OPERATING
CORP., Plaintiff,

v.

MATTRESS MADNESS, INC., 2765 Bed-
ding Corp. and/or 2765 Bedding Corp.
d/b/a Mattress Madness, 1947 Bedding
Corp., Dial–A–Mattress Inc., a New York
Corporation, Mark Graber, Craig Gra-
ber, and Richard Graber, Defendants.

No. 92–CV–3670 (TCP).

United States District Court,
E.D. New York.

Jan. 27, 1994.

Robert S. Fink, Kathryn Kenneally, Kostelanetz, Ritholz, Tigue & Fink, New York City, for plaintiff.

Mitchell A. Stein, Steven M. Hoffberg, Stein & Hoffberg, New York City, for defendants.

## MEMORANDUM AND OPINION

PLATT, Chief Judge.

■ The present cross-motions require this Court to attempt to resolve William Shakespeare's vexing query, "What's in a name?"[1] In the present case, it is that which the parties' call Dial–A–Mattress. Although Shakespeare surely would adjudge the name of the parties' bedding business to be immaterial, they do not share his enthusiasm. Rather, plaintiff and defendants seek an order of this Court preliminarily enjoining their competitor's respective use of the name "Dial–A–Mattress" in commerce. In order to succeed in their efforts, "the moving party must demonstrate both (1) irreparable harm in the absence of the requested relief, and (2) either (a) a likelihood that it will succeed on the merits of the actions, or (b) a sufficiently serious question going to the merits combined with a balance of hardships tipping decidedly in favor of the moving party." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1038 (2d Cir.1992); *American Direct Marketing, Inc. v. Azad Int'l, Inc.,* 783 F.Supp. 84, 90 (E.D.N.Y. 1992).[2]

Plaintiff moves pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. § 1116, and State unfair competition law for an order preliminarily enjoining defendants' use of plaintiff's federally registered service marks. Defendants cross-move for cancellation of plaintiff's federal registration and for a preliminary injunction under the Lanham Act and State law enjoining plaintiff's use of the "Dial–A–Mattress" mark. Plaintiff argues (1) that it owns an incontestable federal registration of the "Dial–A–Mattress" and related service marks; (2) that it is the senior user of that name and mark in commerce; (3) that defendants sold any rights they may have had in the mark; and (4) that defendants' claims are barred by laches. Defendants counter (1) that plaintiff's federal registration is invalid by virtue of plaintiff's abandonment of the mark and inequitable conduct before the Patent and Trademark Office; (2) that Marc Graber is the senior user of the mark in commerce; (3) that no rights in defendants' intellectual property

---

**1.** William Shakespeare, *Romeo and Juliet,* Act II, Sc. 2, Line 43. The full quote, of course, reads as follows: "What's in a name? That which we call a rose. By any other name would smell as sweet."

**2.** To the extent that the issues in this case, if at all, are controlled by New York law, the standard for granting a preliminary injunction in a trademark or unfair competition claim is substantially similar. Under New York law, a preliminary injunction may issue upon a showing of irreparable harm, a likelihood of success on the merits, and demonstrable balance of equities in favor of the moving party. *See Sage Realty Corp. v. Sage Group, Inc.,* 711 F.Supp. 134, 143 (S.D.N.Y. 1989); *Andirondack Appliance Repair, Inc. v. Andirondack Appliance Parts, Inc.,* 148 A.D.2d 796, 538 N.Y.S.2d 118, 119 (App.Div.1989).

passed incident to the sale of their corporate name; and (4) that plaintiff's action is barred by laches and estoppel. Because this Court finds that plaintiff has demonstrated probable irreparable harm and a likelihood of success on the merits on its claims of unfair competition and service mark infringement, this court hereby preliminarily enjoins defendants from further use of plaintiff's trade name and service marks during the pendency of this lawsuit.

## Background

Plaintiff and defendants are engaged in the business of selling mattresses and other bedding products to the public by soliciting telephone orders and delivering the merchandise directly to the purchaser. The defendant Marc Graber claims to have started direct-marketing of bedding products from the basement of his home in Westbury, New York under the name "Dial–A–Mattress" as early as 1972. Hrg. 22–26M; M. Graber 19–20.[3] However, plaintiff secured a federal registration of the service mark "Dial–A–Mattress" in 1985 and subsequently obtained registration for six other marks related to their direct-marketing business.[4] Plaintiff's service mark application to the Patent and Trademark Office (PTO) and the moving papers herein claim to have first used the "Dial–A–Mattress" name in commerce in 1976. HX 70A; Pl. Mem. ¶ 8. Because the historical development of these two businesses is dispositive of the present motions for preliminary injunction, this Court sets forth their respective progeny in significant detail.

Plaintiff Dial–A–Mattress Operating Corporation ("Operating Corp.") is a New York corporation formed in 1990. Napolean Barragan, president and principal shareholder of Operating Corp., first entered the bedding business in January 1976 when he incorporated a New York corporation under the name Dial–A–Mattress, Inc. for the purpose of tele-marketing bedding products directly to the public. Barragan 158, 174–76; DX 48. Plaintiff first advertised using the phrase "Dial–A–Mattress" in New York area newspapers on or about August 1, 1976. HX 744–45. Between 1976 and 1981, Barragan operated a succession of businesses out of the same retail location, all, according to plaintiff, under the badge of the Dial–A–Mattress service mark. Barragan 119–34; 485–90. Although New York State dissolved Dial–A–Mattress, Inc. by proclamation on December 31, 1980 for failure to pay franchise taxes, Barragan registered his organization in the rolls of Queens County as doing business under the name Dial–A–Mattress Company in October and November 1980. PX 12–13.

Barragan incorporated the Dial–A–Mattress Company under the name Dial–A–Mattress Franchise Corporation ("Franchise Corp.") in September 1983. PX 67. Shortly thereafter, on October 31, 1983, Franchise Corp. filed the first of several applications for federal registration of service marks used in connection with the bedding business. Franchise Corp. was awarded a federal registration for the "Dial–A–Mattress" service mark on June 4, 1985. HX 70A. Six additional service mark registrations were issued to Franchise Corp. between 1989 and 1993. HX 70A–E. See Appendix. Franchise Corp. changed its name to Dial–A–Mattress Operating Corporation in 1990. PX 67. As the successor-in-interest to Barragan's prior business entities, Dial–A–Mattress Operating Corporation claims continuous uninterrupted use of the Dial–A–Mattress marks in advertising, on invoices and letters, and on signs and delivery trucks since the first advertisement appeared in commerce as early as 1976. Barragan 174, 488–91. Plaintiff presently makes extensive use of these marks pursuant to its advertising budget of nearly $4 million per year on annual sales totalling nearly $30 million. Barragan 364–65; Vincens 192.

The defendants to this action consist of four corporations presently or previously in competition with plaintiff or its predecessors and three individuals who purportedly own or owned some interest in those corporate

---

3. Citations to deposition transcripts will be referenced by the deponent's name. The transcript of the hearing on this motion will be referenced by "Hrg." and the exhibits entered into evidence at that hearing will be denoted "HX." Exhibits submitted for the hearing by plaintiff and defendants but not admitted into evidence will be referred to as "PX" and "DX," respectively.

4. See Appendix.

defendants. Defendant Marc Graber asserts that he began selling mattresses under the name "Dial–A–Mattress" from the basement of his parents' home in Westbury, New York after graduating from high school in 1972. Hrg. 22–26; M. Graber 26, 31. Graber claims to have operated and advertised this business exclusively under the name "Dial–A–Mattress" between 1972 and 1978. Hrg. 30–38, 61–62; M. Graber 309. In March 1978, Graber first used the name Mattress Madness in connection with his bedding business and claims to have used both Mattress Madness and Dial–A–Mattress continually since that time. M. Graber 175–77.

Graber opened his first bedding store under the name Dial–A–Mattress in Hempstead, New York by late 1979 or early 1980. Hrg. 131; M. Graber 25–26. Graber incorporated this business under the name Dial–A–Mattress, Inc. on June 18, 1981, approximately five and one-half months after Napolean Barragan's corporate registration of that name lapsed. DX 49, 52, 55. Following incorporation of Dial–A–Mattress, Inc., Graber listed his business in the Nassau County White Pages under the name Dial–A–Mattress for the first time, though Graber concedes that another entity was already listed in the phone book under that name. M. Graber 31–32. Graber continued doing business exclusively from his Hempstead, New York store until opening a second location in East Meadow, New York in 1986. M. Graber 26–30.

Dial–A–Mattress, Inc. ceased operations at or about the time Graber incorporated Mattress Madness, Inc. in 1986. Hrg. 155, 176–78, 226; M. Graber 309–15. Graber contends that Mattress Madness, Inc. continued selling mattresses under the trade names and/or service marks Dial–A–Mattress, Mattress Madness and Bed King from the same Hempstead and East Meadow store locations until approximately 1988. M. Graber 10–20, 309–330. In 1988, Graber opened additional store locations in Hicksville and Huntington Station, New York. M. Graber 323–25. Mattress Madness, Inc. was dissolved and replaced by 1947 Bedding Corporation in late 1988 or early 1989. Hrg. 155, 176–77. 1947 Bedding Corporations operated out of the same locations, with the same phone numbers and under the same trade names as Mattress Madness, Inc. Hrg. 176–85. Since 1947 Bedding Corporation dissolved in early 1991, Marc Graber no longer owns any interest in any bedding company presently doing business. He is currently a salesman and consultant to 2765 Bedding Corporation, a corporation jointly owned by his wife and defendant Richard Graber. Hrg. 185–87. 2765 Bedding continues to operate at the same store locations as Graber's prior business entities and continues to operate interchangeably under the names Dial–A–Mattress and Mattress Madness. Hrg. 185–87. 2765 Bedding Corporation, as well as 1947 Bedding Corporation and Mattress Madness, Inc., did not succeed to the assets and liabilities of Graber's predecessor corporations. Hrg. 176–90.

Napolean Barragan, the principal shareholder of plaintiff in this action, approached Graber's in the summer of 1989 seeking to purchase Graber's rights in the corporate name "Dial–A–Mattress, Inc." At the time, Barragan's company was involved in trademark suit against another bedding retailer who was selling mattresses to the public using the telephone number 1–800–M–A–T–T–R–E–S.[5] Barragan informed Graber that the Dial–A–Mattress, Inc. name would improve his litigating position in the then pending litigation. Hrg. 195–96. After hasty negotiations, Graber agreed to sell Barragan the name Dial–A–Mattress, Inc. for $75,000.00. The transaction is memorialized by a letter from Graber dated August 24, 1989 noting approval by the board of directors and shareholders of Dial–A–Mattress, Inc., HX 17, and a contract, HX 18, providing as follows:

---

**5.** *See Dial–A–Mattress Franchise Corp. v. Page,* 880 F.2d 675 (2d Cir.1989). In *Page,* this Court issued a preliminary injunction against Page prohibiting his use of the telephone number 1–800–M–A–T–T–R–E–S–S in competition with plaintiff's established use of the local phone number M–A–T–T–R–E–S in the 201, 212, 516, 203 and 718 area codes. The Second Circuit affirmed, finding that a second comer may be enjoined from using even a generic term such as "mattress" when such use is carried out in a confusingly similar manner.

August 31, 1989

For and in consideration of the sum of: SEVENTY FIVE THOUSAND ($75,000) DOLLARS, DIAL–A–MATTRESS INC. does, HEREBY, sell its corporate name, as aforesaid, to the DIAL–A–MATTRESS FRANCHISE CORP., NEW YORK, NY.

DIAL–A–MATTRESS, INC.,

By: /s/ Mark Graber

President

. . . .

/s/ _____

Napoleon Barragan, President, Dial–A–Mattress Franchise Corp.

/s/ _____

Mark Graber, President, Dial–A–Mattress, Inc.

Dial–A–Mattress Franchise Corp. negotiated a series of checks payable to Mark Graber and 1947 Bedding Corp. in payment of the amount due under the contract, all of which Graber indorsed "Agreement dated 8/24/89," with the exception of the final check which was indorsed "For Dial–A–Mattress Inc. name (not) phone listings or numbers." Complaint, Ex. C. Graber contends that the latter restriction was inserted with Barragan's knowledge and consent. Hrg. 95–97.

Notwithstanding this agreement, 1947 Bedding Corporation continued to use the Dial–A–Mattress name in advertising until its dissolution in 1991. However, 2765 Bedding Corporation continues to use the Dial–A–Mattress name in solicitation and advertising to this day. Plaintiff seeks an order preliminarily enjoining defendants from using the name Dial–A–Mattress in commerce based upon its federal registration covering the mark, claimed senior use of the mark, and rights conferred by virtue of its purchase of the corporate name. Defendants cross-move for a preliminary injunction based upon their claim that they are the senior users of the Dial–A–Mattress name and that the aforementioned contract transferred no rights in that name aside from the corporate registration in the State of New York.

## Discussion

 Both parties herein claim trade name and service mark rights in the name Dial–A–Mattress. A service mark is a word or combination of words used to identify and distinguish a particular service as being the labors of a unique, albeit anonymous, source. 15 U.S.C. § 1127. Thus, "while a trademark serves to identify and distinguish the source and quality of a tangible product, a service mark functions to identify and distinguish the source and quality of an intangible service." 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 19.29(1), at 19:134 (3d ed. 1992) [hereinafter *"McCarthy"*]. Conversely, a trade name is a name, phrase or symbol that is used to identify and distinguish the business itself from other entities rather than distinguishing the goods or services the company provides. 15 U.S.C. § 1127. *See Madrigal Audio Labs., Inc. v. Cello, Ltd.,* 799 F.2d 814, 822 (2d Cir.1986).

 Trade names and service marks are property interests that may be protected under both state and federal law. Under the federal Lanham Act, a registered service mark is infringed when a third party, without the registrant's consent, uses a reproduction or colorable imitation of that mark in commerce and such use is likely to cause confusion. 15 U.S.C. § 1115. *See Gruner + Jahr USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993). Additionally, the senior user of an unregistered service mark or trade name may establish a *prima facie* case of service mark infringement and unfair competition under both New York State and federal law by showing that the name or mark is distinctive and there is a likelihood that the public will be deceived or confused by the similarity of the marks. 15 U.S.C. § 1125; N.Y.Gen.Bus.Law § 368–d. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2753, 2763, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring). Indeed, "[w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical."[6] *New*

---

6. There is an important difference in the elements of a claim for infringement of a registered mark and unfair competition that is not relevant to the present case. A name or symbol that is generic or merely descriptive of the goods or services offered is not susceptible to any protection from infringement under the common law, *see Florence Mfg. Co. v. J.C. Dowd & Co.,* 178 F.

*West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (9th Cir.1979). Upon review of the testimony and documentary evidence submitted in support of the present cross motions, this Court finds sufficient cause to grant plaintiff a preliminary injunction against defendant's use of the name "Dial–A–Mattress" in commerce.

## I. Likelihood Of Success On The Merits

Plaintiff moves for a preliminary injunction alleging that defendants' use of the name "Dial–A–Mattress" in commerce infringes upon plaintiff's federally registered service mark and constitutes unfair competition under both New York State and federal law. *See* 15 U.S.C. §§ 1114, 1125 (1986); N.Y.Gen. Bus.Law § 368–d. Defendants assert the equitable defenses of fraud, abandonment, unclean hands, laches and estoppel in seeking to cancel plaintiff's incontestable federal registration and in opposition to plaintiff's claim for preliminary relief. *See* 15 U.S.C. §§ 1064, 1065. Additionally, defendants oppose plaintiff's service mark infringement and unfair competition claims under state and federal law, as well as seeking preliminary relief themselves, by claiming that they are the senior users of the Dial–A–Mattress name in commerce and hence have superior rights in that trade name and service mark. *See Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 415, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1916) (ownership governed by priority of use); *Sutton Cosmetics (P.R.) Inc. v. Lander*

Co., 455 F.2d 285, 288 (2d Cir.1972) (same). Each of these claims and defenses will be addressed in seriatim.

### A. Likelihood Of Confusion

A demonstrable likelihood of confusion is essential to both parties' claims of service mark and trade name infringement and unfair competition. There can be no dispute that the parties concurrent use of the Dial–A–Mattress name poses a substantial likelihood of confusion among consumers. Although our analysis on this issue is ordinarily guided by evaluation of the familiar seven factor inquiry set forth by Judge Friendly in *Polarad v. Polaroid Elec. Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961),[7] we are mindful of the need to focus on the ultimate question of consumer confusion rather than mechanistic balancing of the *Polaroid* factors. *Paddington v. Attiki,* 996 F.2d 577, 584–85 (2d Cir.1993). Both sides affirmatively argue that there is a substantial likelihood of confusion that cannot be remedied unless the junior user is enjoined. Moreover, confusion is simply inevitable since the parties are selling the same products in the same channels of commerce under the guise of the identical Dial–A–Mattress mark. Plaintiff and defendants both cite significant instances of actual confusion.[8] Moreover, the fact that both parties do most of their business blindly over the telephone rather than at retail loca-

73, 74–75 (2d Cir.1910), or the Lanham Act. *Gruner + Jahr USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1075–76 (2d Cir.1993). However, a second comer, though entitled to use a generic term, may be enjoined under the law of unfair competition from passing its products off as that of the first user notwithstanding the fact that the first user's name or symbol is generic. *See Dial–A–Mattress Franchise Corp. v. Page,* 880 F.2d 675, 678 (2d Cir.1989) (plaintiff herein secured preliminary injunction against competitor's use of 1–800–M–A–T–T–R–E–S–S phone number even though "mattress" is generic name).

7. Under *Polaroid,* the likelihood of confusion is determined by reference to the following nonexclusive factors: (1) the strength of the mark; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) the likelihood that the senior user will bridge the gap; (5) evidence of actual confusion; (6) the junior

user's bad faith; (7) the quality of the junior user's product; (8) the sophistication of the relevant consumer group. *Polaroid,* 287 F.2d at 495. These criteria are equally applicable to cases of unfair competition or service mark and trade name infringement. *See Lang v. Retirement Living Publishing Co., Inc.,* 949 F.2d 576, 580 (2d Cir.1991).

8. Indeed, one of defendants' witnesses at the hearing on this motion confused the two entities on the witness stand, testifying that he knew of defendant Graber as the Dial–A–Mattress advertising under the 1–800–M–A–T–T–R–E–S phone number, which is actually plaintiff's business. Hrg. 322–23. The parties have also cited instances of confusion by customers, creditors, process servers, and even the Better Business Bureau, who erroneously cited plaintiff instead of defendants. Vincens 234–38; M. Graber 414; R. Graber 161–68; PX 32.

tions deprives consumers of any real opportunity to distinguish the two entities. Accordingly, the Court finds that confusion is not merely likely but inevitable, warranting injunctive relief.

### B. Common Law Priority In Dial–A–Mattress Mark

The parties right to relief in this case ultimately turns upon which entity is the senior user of the "Dial–A–Mattress" name in commerce. The first user who continuously uses an inherently distinctive service mark in the relevant market is the senior user and has priority over any second comers. *Hydro Dynamics, Inc. v. George Putnam & Co.*, 811 F.2d 1470, 1472 (Fed.Cir.1987); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 875 (E.D.N.Y.1978). Similarly, a business name is susceptible to protection as a trade name at such time as use of that name in commerce causes it to become synonymous with the entity in the minds of the relevant consuming public. *Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 822 (2d Cir.1986); *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534–35 (9th Cir.1989). However, just as one may acquire rights in an inherently distinctive trademark or service mark from its very first use, an arbitrary, fanciful or suggestive business name in continuous use is protectable as a trade name from the time of its first use in commerce. *Accuride*, 871 F.2d at 1534–36; *Stork Restaurant v. Sahati*, 166 F.2d 348, 355 (9th Cir.1948). *Cf. Two Pesos*, —— U.S. at ——, 112 S.Ct. at 2758 (inherently distinctive trade dress protectable from first use). Applying these basic principles to the present facts, this Court finds plaintiff to be the likely senior user.

### 1. Strength of the Dial–A–Mattress Mark

It is axiomatic that words or symbols must be capable of identifying and distinguishing the goods, services or the entity itself in order to properly serve as a trademark, service mark or trade name. *The Trade–Mark Cases*, 100 U.S. 82, 94, 25 L.Ed. 550 (1879); *Florence Mfg. Co. v. J.C. Dowd & Co.*, 178 F. 73, 74–75 (2d Cir.1910). A generic term that merely identifies the genus rather than the species of the product or service belongs to the public at large and may not be appropriated as a trademark. *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 562 (2d Cir.1990). Similarly, words that merely describe the substance of the goods or services offered lack distinction and hence cannot serve as a valid mark. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir.1976). However, words that are descriptive in their common usage may gain "secondary meaning" through use as a trade name or mark such that the terms become commonly associated with a particular source or the products or services of that source in the minds of the relevant consuming public. *Id.* at 10–11. In such a case, the user may accrue property rights in the descriptive terms, but only from such time as he or she can establish secondary meaning in the relevant market. In contrast, words or symbols that are arbitrary, fanciful or suggestive of the entity or its product or service are "inherently distinctive" and the user may accrue property rights therein from the first use in commerce. *Id.* at 11.

Dial–A–Mattres is entitled to protection as an inherently distinctive mark. Plaintiff's incontestable federal registration is not susceptible to challenge on the basis that the mark is merely descriptive. *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir.1993). Even if defendants were to prevail in their efforts to cancel plaintiff's registration, the "Dial–A–Mattress" mark would still be entitled to protection as an inherently distinctive mark that is merely suggestive of the services the mark represents. "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*; 295 F.Supp. 479, 488 (S.D.N.Y.1968). The phrase "dial a mattress," while certainly establishing a link between the telephone and bedding products, does not begin to describe the nature, scope or extent of the services that name has come to represent. *See Blisscraft of Hollywood v.*

*United Plastics Co.*, 294 F.2d 694, 699–700 (2d Cir.1961) (mark not descriptive merely because it identifies subject matter). Additionally, where, as here, the Trademark Office awards a federal registration without requiring proof of secondary meaning, the mark is presumed to be suggestive rather than descriptive. *Abercrombie & Fitch*, 537 F.2d at 11. Therefore, this Court finds Dial-A-Mattress to be merely suggestive of the parties' services and, accordingly, is a strong mark worthy of broad protection.

### 2. Priority of Actual Use in Commerce

The priority of actual use of the name Dial-A-Mattress is hotly contested by the parties in the present case. Plaintiff has come forth with uncontested documentary evidence in the form of microfilmed advertisements that show its use of the name Dial-A-Mattress in August 1976. HX 744–45. Defendants claim to have been using the Dial-A-Mattress name continuously in commerce since at least 1972. But the defendants have failed to produce any credible documentary evidence showing any use of that name prior to the 1980s, save a few invoices of dubious authenticity.[9] They rely primarily upon the testimony of several witnesses to establish that Graber was doing business under the Dial-A-Mattress name in the early 1970s. Although this Court would be reluctant to conclude that these witnesses' vague testimony is sufficient to sustain defendants' burden of proving prior use of the Dial-A-Mattress mark for purposes of their preliminary injunction motion, it is sufficient proof to oppose plaintiff's motion for preliminary injunction on this ground alone.

### 3. Sale Of Dial-A-Mattress Corporate Name

■ Defendant Mark Graber, as sole shareholder of Dial-A-Mattress, Incorporated, sold that "corporate name" to the predecessor of the plaintiff, the Dial-A-Mattress Franchise Corporation, for $75,000 in 1989. Defendants claim that this transaction did nothing more than convey to plaintiff the right to incorporate under the name "Dial-A-Mattress, Inc." Plaintiff claims that Graber sold all of his rights and interests in the name Dial-A-Mattress by virtue of the 1989 sale.[10] This Court finds as a matter of law that, irrespective of whether Graber assigned his rights, if any, in the service mark "Dial-A-Mattress," this transaction constitutes an assignment of Graber's rights in the trade name "Dial-A-Mattress" and thus renders plaintiff the senior user of both the trade name and service mark.

■ Whether a company may claim rights in a trade name and/or service mark depends upon the manner of usage and the possible impact upon purchasers and customers. *In re Amex Holding Co.*, 163 U.S.P.Q. 558, 559 (T.T.A.B.1969). While a service mark serves to identify a particular service as being the labors of a unique, though anonymous, source, a trade name identifies the entity as being the peculiar source of the services offered. *Accuride*, 871 F.2d at 1534. Of course, a company may properly use a company name as both a trade name and service mark. *Amex Holding*, 163 U.S.P.Q. at 559. Although it is unclear when, if at all, Graber made service mark use of the Dial-A-Mattress name, it is clear that Graber's claimed use of the Dial-A-Mattress name

9. The documents defendant produced showing use of the Dial-A-Mattress name prior to 1980s contained patent irregularities that rendered most, if not all, incredulous. For instance, several invoices purported to originate from stores that were not yet in existence as of the date of the invoice. Hrg. 134–36; HX 478. Other invoices from suppliers appear to be printed in a different typeface in the area containing the name "Dial-A-Mattress." Hrg. 118–25; HX 475–76. Finally, defendants produced several "original" photocopies of invoices that defendant Mark Graber contends he copied from the original invoices in his records before discarding them several years ago. However, these "original" photocopies are illegible in many areas where "copies" purport-edly made *from* them are easily readable. *See* HX 28A–H; DX 27.

10. Defendants attempt to discount the import of this sale by criticizing plaintiff's "nefarious" motivation for the sale, namely to gain evidence of senior use in a prior lawsuit, *Dial-A-Mattress Franchise Corp. v. Page*, 880 F.2d 675 (2d Cir. 1989). Amend.Ans. ¶ 97. However, the motivation for a sale is irrelevant and senior user status may be properly achieved by assignment in anticipation or in the midst of litigation. *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 678 (7th Cir.1982).

constitutes trade name usage from the very start. Graber testified that he was doing business under the trade name Dial–A–Mattress and he used that name to identify himself to customers and suppliers—archetypical trade name usage. *See Application of Walker Process Equipment,* 233 F.2d 329, 331 (2d Cir.1956) (use of company name in advertising is trade name usage); 1 *McCarthy* §§ 9.01, 9.06, at 9:5–27. Assuming for purposes of this motion that Graber did indeed make such usage of the Dial–A–Mattress name prior to plaintiff's first use, Graber accrued rights in the Dial–A–Mattress trade name from the time he first used the name in commerce.

Graber claims that his rights in the trade name Dial–A–Mattress did not pass by way of contract in the sale of the "corporate name" Dial–A–Mattress, Inc. Under New York law, a corporate name is the name used by a corporation so "as to distinguish it from the names of corporations of any type or kind." N.Y.Bus.Corp.Law § 301(a)(2) (McKinney 1986). The mere act of incorporation under a particular name does not confer any right to trade under that name. *Coit Drapery Cleaners, Inc. v. Coit Drapery Cleaners of N.Y., Inc.,* 423 F.Supp. 975, 978 (E.D.N.Y.1976). A corporation may, however, accrue protectable property rights in its corporate name through use as a trade name. *Madrigal Audio,* 799 F.2d at 822. Unremarkably, a trade name is just what it implies: The "name used by a person to identify his or her business." 15 U.S.C. § 1127. Thus, while a corporate name and trade name are factually distinct terms, the interrelation between the two terms is unmistakable, particularly when the corporation trades under its corporate name. *See In re Lyndale Farm,* 186 F.2d 723, 726 (C.C.P.A. 1951). Notwithstanding the fact that the right to incorporate under the Dial–A–Mattress name was sold to plaintiff, Graber claims that the corporate entity was transferred devoid of the right to trade under its own corporate name.

However, this Court finds that Graber assigned whatever rights he may have accrued in the trade name "Dial–A–Mattress" incident to the sale of the corporate registration of that same name in 1989. Graber claims that plaintiff paid $75,000 for a corporate name divorced from any right to trade under that name in commerce, essentially buying nothing but the right to incorporate under the name Dial–A–Mattress, Incorporated rather than Dial–A–Mattress Franchise Corporation. This contention is simply without merit and, indeed, is deceitful and fraudulent. Inescapably, one who trades under its corporate name inextricably intertwines its rights in the trade name with its rights in the corporate name. *See Walker Process,* 233 F.2d at 332 ("initial presumption is that corporate name is a trade name"); *Stork Restaurant,* 166 F.2d at 352–53 (property right in trade name more easily found when part of corporate name). In such a case, the trade name cannot be severed from the corporate identity. "The effect of assuming a corporate name [as a trade name] ... is to exclusively appropriate that name. It is an element of the corporation's existence." *American Steel Foundries v. Robertson,* 269 U.S. 372, 380, 46 S.Ct. 160, ——, 70 L.Ed. 317 (1926). The trade name Dial–A–Mattress being an essential component of Dial–A–Mattress, Incorporated's existence, we find that corporate name could not be transferred without the concomitant right to trade upon that name in commerce.

Furthermore, this Court will not countenance Graber's attempt "to arrogate to himself the trade reputation for which he received valuable consideration." *Levitt Corp. v. Levitt,* 593 F.2d 463, 468 (2d Cir.1979). Graber was fully aware that plaintiff approached him in 1989 to buy the Dial–A–Mattress "corporate name" in order to buttress plaintiff's litigating position in the its prior lawsuit. Yet Graber now claims that he sold plaintiff no property rights in the Dial–A–Mattress name and hence did nothing to improve plaintiff's litigating position in the *Page* case. "To protect the property interest of the purchaser, ... the courts will be especially alert to foreclose attempts by the seller to 'keep for himself the essential thing he sold, and also keep the price he got for it'." *Id.* (quoting *Guth v. Guth Chocolate Co.,* 224 F. 932, 934 (4th Cir.), *cert. denied,* 239 U.S. 640, 36 S.Ct. 161, 60 L.Ed. 481

(1915)). We find no basis in law or fact to support the construction Graber seeks to give the 1989 contract of sale. Accordingly, this Court finds that plaintiff herein is the successor in interest to Graber's rights in the trade name "Dial–A–Mattress" by virtue of the 1989 contract of sale.

Defendants claim that even if the 1989 agreement purports to transfer rights in Graber's intellectual property, that assignment is invalid as an assignment in gross. Defendants correctly point out that an owner of a trademark or service mark may not assign the rights to that mark "in gross," i.e. divorced from the appurtenant good will that the mark engenders. 15 U.S.C. § 1060. *See Marshak v. Green,* 746 F.2d 927, 929 (2d Cir.1984); *Haymaker Sports, Inc. v. Turian,* 581 F.2d 257, 260 (C.C.P.A.1978). Good will is an evasive term that is usually defined by reference to the aged definition of Lord Eldon, that being the likelihood "that the old customers will resort to the old place." *Newark Morning Ledger Co. v. United States,* — U.S. —, —, 113 S.Ct. 1670, 1683, 123 L.Ed.2d 288 (1993) (quoting *Crotwell v. Lye,* 34 Eng.Rep. 129, 134 (1810)). In effect, good will is the value attributable to a going concern apart from its physical assets—the intangible worth of buyer momentum emanating from the reputation and integrity earned by the company. A trademark or service mark is merely the symbol by which the public recognizes that reputation and hence has no independent significance apart from the owner's good will. *Marshak,* 746 F.2d at 929.

The rule against assignments in gross is an important tool for protecting consumer expectations when buying goods or services by reference to its associated trademark or service mark. *Marshak,* 746 F.2d at 929. The rule is not, however, intended to be a mechanistic tool for invalidating assignments which do not satisfy a stereo-typed set of formalities. *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.,* 315 F.Supp. 45, 54

(S.D.N.Y.1970), *aff'd,* 437 F.2d 566 (2d Cir. 1971). Although courts historically have looked for a transfer of the assets embraced by the trademark to evidence the passage of good will, a transfer of assets is not essential to consummate an assignment of the name. *See Defiance Button Machine Co. v. C & C Metal Products Corp.,* 759 F.2d 1053, 1059–60 (2d Cir.), *cert. denied,* 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 677 (7th Cir.1982); *Raufast S.A. v. Kicker's Pizzazz, Ltd.,* 208 U.S.P.Q. 699, 702, 1980 WL 30295 (E.D.N.Y.1980). Particularly when the mark refers to a business that sells the trademarked goods of others, the concomitant passage of assets or inventory is unnecessary since it is the intangible service and not the tangible product that is the subject matter of the trade name or service mark. *Visa, U.S.A., Inc. v. Birmingham Turst, Nat. Bank,* 696 F.2d 1371, 1374–76 (Fed.Cir.1982), *cert. denied,* 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 104 (1983); *Money Store,* 689 F.2d at 678. Consequently, rather than looking for some formalistic passage of assets, the test is simply whether the transaction is such that the assignee can "go on in real continuity with the past." *Merry Hull & Co. v. Hi–Line Co.,* 243 F.Supp. 45, 51–52 (S.D.N.Y.1965). *See Defiance Button,* 759 F.2d at 1059; *Bambu Sales, Inc. v. Sultana Crackers, Inc.,* 683 F.Supp. 899, 904–05 (E.D.N.Y.1988).

The 1989 contract of sale validly transferred Dial–A–Mattress, Incorporated's rights in its trade name and does not run afoul of the rule against assignments in gross. It may not be doubted that plaintiff could maintain continuity with Dial–A–Mattress, Inc. but for defendants' continued use of the Dial–A–Mattress name themselves.[11] Plaintiff built up substantial goodwill in the name Dial–A–Mattress themselves well before the 1989 transaction. A merger of whatever goodwill Dial–A–Mattress, Inc. earned with plaintiff's pre-existing goodwill

---

11. Defendants claim that this Court must conclude that there is no detrimental consumer confusion because consumers are ambivalent about what company provides the Dial–A–Mattress services in order to conclude that plaintiff can maintain continuity with the past. Supp.Mem. at 2. However, confusion presently exists not because there was a break in continuity between Dial–A–Mattress, Inc. and its purchaser, but because defendants continue to trade on the name Dial–A–Mattress notwithstanding the sale of that name over four years ago.

does not create a discontinuity with the prior entity. *Cf. J. Atkins Holdings, Ltd. v. English Discounts, Inc.*, 729 F.Supp. 945, 950 (S.D.N.Y.1990) (assignment by foreign manufacturer to U.S. distributer not in gross because assignee had developed its own good will).

Furthermore, the goodwill of a corporation passes to the purchaser of all its assets unless the seller reserves its rights in the intellectual property.[12] *Berni v. Int'l Gormet Restaurants of Amer.*, 838 F.2d 642, 646 (2d Cir.1988); *Stillman v. Tuesday's Restauranteurs, Inc.*, 99 A.D.2d 735, 472 N.Y.S.2d 362, 363 (App.Div.1984). By 1989, Graber's business was incorporated as 1947 Bedding Corporation doing business under the name "Mattress Madness." Plaintiff purchased all there was left to buy from Dial–A–Mattress, Incorporated in 1989 because that entity no longer maintained business operations and thus had no assets other than its intellectual property at that time. M. Graber 175–78, 226. Where, as here, the seller has no tangible assets related to the mark, transfer of any remaining assets adequately supports the assignment of the mark. *See H & J Foods, Inc. v. Reeder*, 477 F.2d 1053, 1055–56 (9th Cir.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973). Accordingly, plaintiff succeeded to the Dial–A–Mattress trade name and appurtenant good will by assignment in the 1989 transaction.

Indeed, if we were to find that Graber's sale of the Dial–A–Mattress trade name to plaintiff constitutes an assignment in gross, so too must the naked assignment of Graber's intellectual property rights from one failed corporation to the next be an assignment in gross. Graber contends that each of his successive corporations assigned its rights in the Dial–A–Mattress name to a subsequent corporation on the eve of its dis-

solution. Each of these purported assignments were unaccompanied by any consideration and none of the corporations in this chain of title assumed the assets or liabilities of their predecessor. M. Graber 186–90. When "all business operations cease and the tangible assets are separated from good will, the tradenames and trademarks of the business cease to be protectable." 1 *McCarthy* § 18.09(1), at 18:44. "Where the business goes, the trademark goes, whether in life or to death." *Ammon & Person v. Narragansett Dairy Co.*, 262 F. 880, 884 (1st Cir.1919). When Dial–A–Mattress, Inc., Mattress Madness, Inc., and 1947 Bedding Corp. ceased to exist and transferred no assets nor liabilities to a successor entity, any rights in the Dial–A–Mattress name were abandoned and returned to the public domain. *See Defiance Button*, 759 F.2d at 1062; *Hough Mfg. Corp. v. Virginia Metal Indus., Inc.*, 453 F.Supp. 496, 500 (E.D.Va.1978). Since all of these transfers occurred in the late 1980s and early 1990s, plaintiff will then be the superior user of the mark by virtue of its continuous use of the mark since 1976.[13]

The assignee of a trade name or service mark "steps into the shoes of the assignor." *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). As a result of the sale of the Dial–A–Mattress corporate name, plaintiff succeeded to Graber's claimed first use of the Dial–A–Mattress trade name in commerce. *See Johanna Farms*, 468 F.Supp. at 874–75. Hence, as between plaintiff and defendants, plaintiff is the senior user of the Dial–A–Mattress trade name in commerce. Moreover, the owner of a service mark can tack prior "analogous use" of a trade name to his or her service mark use in

---

**12.** Graber seems to contend that his reservation of right in phone listings and numbers on the back of the checks plaintiff tendered in payment for the corporate name somehow preserved his rights in the Dial–A–Mattress goodwill. Although we doubt that this restrictive indorsement could alter the contractual rights of the parties, neither may it preserve any rights in Dial–A–Mattress. First, Dial–A–Mattress had no such listings or numbers since its operations ceased several years earlier. Furthermore, transfer of phone listings or customer lists is not a prerequi-

site to a transfer of goodwill. *Sterling Brewers, Inc v. Schenley Indus., Inc.*, 441 F.2d 675, 680 (C.C.P.A.1971).

**13.** To the extent that plaintiff is also guilty of such naked transfers between the succession of businesses that preceded it, plaintiff will still prevail over defendants by virtue of its continuous use of the mark at least since Franchise Corp. was incorporated in 1983.

order to claim priority in a service mark. *Martahus v. Video Duplication Services, Inc.*, 3 F.3d 417, 421 (Fed.Cir.1993); *Malcolm Nicol & Co. v. Witco Corp.*, 881 F.2d 1063, 1065 (Fed.Cir.1989). Although any significant prior use may be sufficient to bar another's attempt to register the mark, *National Cable Television Ass'n v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1577–78 (Fed.Cir.1991), the holder of a mark may offensively assert the prior analogous use to establish service mark seniority only where such activity was "of a nature and extent such as to create an association of the term with the user's goods." *Malcolm Nicol*, 881 F.2d at 1065. *See Windows User, Inc. v. Reed Business Pub., Ltd.*, 795 F.Supp. 103, 108 (S.D.N.Y.1992). Unequivocally, use of a trade name by an entity in a service business is sufficient to create an association with the user's services. *National Cable*, 937 F.2d at 1577–78; *Viking Boat Co. v. Viking Camper Supply, Inc.*, 191 U.S.P.Q. 297, 302 (T.T.A.B. 1976). *See* 2 *McCarthy* § 20.04(2), at 20:30. Accordingly, plaintiff may claim priority in both the Dial–A–Mattress trade name and service mark as of the date of Graber's first use of the Dial–A–Mattress trade name in commerce, at least as between the parties *inter se*.[14]

## C. *Service Mark Infringement Under Lanham Act*

■ Section 32(1) of the Lanham Act prohibits the use of a registered service mark of another in such a way as to cause a likelihood of consumer confusion or public deception. 15 U.S.C. § 1114(1). Plaintiff's incontestable federal registration of the Dial–

**14.** A registrant seeking to claim use in commerce before the date of first use claimed in the service mark application must prove such use by clear and convincing evidence. *See Elder Mfg. Co. v. International Shoe Co.*, 194 F.2d 114, 118 (C.C.P.A.1952). Since our decision on the present motion assumes prior use by Graber, we express no opinion as to whether plaintiff could claim the benefit of an earlier use by virtue of their purchase of Graber's rights.

**15.** A registered service mark becomes incontestible after five years of continuous use following registration upon the filing of an affidavit with the trademark office attesting to such use. 15 U.S.C. § 1065. *See American Express Co. v.*

A–Mattress mark constitutes conclusive evidence of plaintiff's ownership and right to use the mark. 15 U.S.C. § 1115(b), 1065.[15] Thus, as owner of the Dial–A–Mattress registration and in light of the likelihood of confusion in this case, plaintiff has demonstrated a likelihood of success on the merits of its service mark infringement claim under section 32 subject only to defendants' proof of an appropriate affirmative defense. An incontestable mark bars any defense against the validity and enforceability of that registration except those set forth in section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b). *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). In addition to these enumerated defenses to the mark's contestability and registrability, an alleged infringer may successfully defend an infringement claim by demonstrating accrued common law rights in the mark prior to the date of registration that are superior to the registrant's rights. 15 U.S.C. §§ 1065, 1115(b). In such a case, the registrant may not preclude the senior user from using the mark in the limited geographic area wherein that user accrued superior common law rights in the mark prior to registration. *See Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F.Supp. 96, 112–13 (S.D.N.Y.1989).

### 1. Cancellation of Dial–A–Mattress Mark

Defendants contend that plaintiff's registration is contestable and subject to cancellation on three independent grounds under section 33(b) of the Lanham Act: Fraud upon the Patent and Trademark Office (PTO); abandonment; and unclean hands.[16]

*American Express Limousine Serv., Ltd.*, 772 F.Supp. 729, 732 (E.D.N.Y.1991). The Dial–A–Mattress mark became incontestible in 1991.

**16.** Defendants' also seem to assert that their purported prior use is grounds for cancelling plaintiff's registration. To the extent defendants so state, their reliance is misplaced. An incontestible federal registration may not be challenged upon the basis that the mark is inferior in priority to defendants' previously acquired rights. *McCarthy* § 32.44(5)(b), at 32:180. In fact, any "registration existing for over five years may be cancelled only on the specific grounds enumerated therein [in section 14(3)], none of which involves ownership of the registered mark."

Abandonment and unclean hands, unlike defendants' fraud claim, are also affirmative defenses to liability for unfair competition in plaintiff's case-in-chief. 3 *McCarthy* § 32.-44(6), at 32:186. Accordingly, we will consider these claims separately below along with defendants' other equitable defenses to infringement and turn our attention to the fraud claim.

 Fraud on the PTO is an exception to incontestability and grounds for cancelling a registration. *See National Trailways Bus System v. Trailway Van Lines, Inc.,* 269 F.Supp. 352, 356 (E.D.N.Y.1965). The party seeking cancellation bears the burden of proving the essential elements of a fraud claim by clear and convincing evidence. *Gear, Inc. v. L.A. Gear California, Inc.,* 670 F.Supp. 508, 513 (S.D.N.Y.1987); *Money Store,* 689 F.2d at 670. In order to succeed, defendants must demonstrate:

(1) A false representation regarding a material fact.

(2) Knowledge or belief that the representation is false ("scienter").

(3) An intention to induce the listener to act or refrain from acting in reliance upon the misrepresentation.

(4) Reasonable reliance upon the misrepresentation.

(5) Damage proximately resulting from such reliance.

3 *McCarthy* § 31.21(2)(a), at 31:96. ·

Defendants cite two instances where statements by or on behalf of plaintiff purportedly amount to fraud. First, defendants claim that plaintiff falsely characterized their business as a retail outlet wherein customers can come and view the merchandise, notwithstanding the fact that plaintiff operates from a single warehouse location. Also, defendants claim that plaintiff falsely asserted that no other party had a right to use the name Dial-A-Mattress despite plaintiff's knowledge of Graber's business.

Neither of the alleged misrepresentations rise to the level of affirmative fraud. Defendants claim that plaintiff's warehouse was

"unsuited" for displaying bedding and that plaintiff dissuaded customers from seeking to visit the warehouse. Def.Mem. ¶ 27. Be that as it may, a place of business did exist where customers *could* conceivably view the merchandise. Barragan 506–08. Even if not a single customer ever visits the warehouse, plaintiff's statements are not fraudulent so long as a customer could do so. *See Yocum v. Covington,* 216 U.S.P.Q. 210, 216–17 (T.T.A.B.1982) (all doubts resolved in favor of upholding registration).

Plaintiff's failure to disclose defendants' concurrent use of the Dial-A-Mattress name simply may not support a fraud claim. A trademark applicant must disclose only those users who are known to have a *right* to use the same or a related mark. *See* 37 C.F.R. 2.33(b)(1). The applicant has no obligation, however, to disclose known users believed to be infringing the applicant's rights in the mark. *Haviland & Co. v. Johann Haviland China Corp.,* 269 F.Supp. 928, 936–37 (S.D.N.Y.1967). Plaintiff has steadfastly maintained that neither Graber nor anyone else has a right to use the Dial-A-Mattress name. Consequently, there was no "knowingly false" statement such as is required to support a charge of fraud and defendants are unlikely to succeed in their efforts to cancel plaintiff's registration on this ground. *Ambercrombie & Fitch,* 537 F.2d at 14. Therefore, defendants have failed to make out a *prima facie* case of fraud sufficient to impugn plaintiff's federal registration.

### 2. Prior Use Defense

██ An incontestable registration does not confer an unimpeachable right to exclusive use of the mark. Where the registrant is in fact the junior user of the mark, the senior user retains a right to use the mark in the geographic area wherein that user accrued common law rights superior to the registrant prior to the date of registration. 15 U.S.C. § 1065. In order to succeed in this defense, the claimed senior user must demonstrate (1) present rights in the mark, (2) acquired prior to the date of registration, (3)

*Treadwell's Drifters, Inc. v. Marashak,* 18 U.S.P.Q.2d 1318, 1320 (T.T.A.B.1990). *See* 15 U.S.C. §§ 1064(3), 1065.

continual use of the mark since that date, and (4) use prior to the registrant on the goods or services that are in issue. 2 *McCarthy* § 26.19, at 26:88; *Cullman Ventures,* 717 F.Supp. at 113.

Even assuming that defendants could prove prior use giving rise to a common law right before plaintiff's registration, they have not made out a *prima facie* case of the prior use defense. First, it is unlikely defendants will be able to show that they have any present claim of right in the mark. *Ante,* at I–B. Furthermore, "[f]or purposes of the prior use defense, 'continuing' is not the same as lack of abandonment." *Cullman Ventures,* 717 F.Supp. at 115. Instead, defendants must affirmatively demonstrate an unbroken continuum of use without significant interruption from a date prior to the maturation of plaintiff's rights in the mark. *Id.; Casual Corner Assoc., Inc v. Casual Stores of Nevada, Inc.,* 493 F.2d 709, 712 (9th Cir.1974). At best, defendants' witnesses and evidence in this matter establish only sporadic use of the Dial–A–Mattress name that is insufficient to overcome the strong policy behind the Lanham Act of rewarding those who first seek registration. *Weiner King, Inc. v. Weiner King Corp.,* 615 F.2d 512, 523 (C.C.P.A.1980). Accordingly, defendants have not demonstrated a likelihood of success on the merits of their prior use defense.

### D. *Unfair Competition Under Lanham Act and State Law*

■■■ A junior user of a distinctive trade name or unregistered service mark may be held liable for unfair competition when such use gives rise to a likelihood that the public will be deceived or confused by the similarity of the marks. 15 U.S.C. § 1125; N.Y.Gen. Bus.Law § 368–d. *See Lang v. Retirement Living Publishing Co.,* 949 F.2d 576, 579–80 (2d Cir.1991); *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2763 (Stevens, J., concurring). A claim of unfair competition may be asserted by any party who may claim a use senior to the defendant *inter se,* even if that user does not enjoy universal priority. *Hanover Star Milling,* 240 U.S. at 415, 36 S.Ct. at 361. Moreover, even if defendants herein are suc-

cessful in invalidating plaintiff's federal registration, cancellation of the registration merely deprives the registrant the evidentiary presumption of the registration and bars the statutory infringement claim under section 32, but does not preclude an unfair competition claim under section 43(a) or State law. *Orient Express Trading Co. v. Federated Dept. Stores, Inc.,* 842 F.2d 650, 653 (2d Cir.1988). This Court has already found that the Dial–A–Mattress mark is distinctive, that the parties' concurrent use creates a likelihood of confusion and that plaintiff is the probable senior use of the Dial–A–Mattress mark. Therefore, plaintiff has demonstrated a likelihood of success on its unfair competition claims, subject to defendants' equitable defenses addressed below.

### II. Equitable Defenses To Infringement and Unfair Competition

Defendants assert a variety of affirmative defenses seeking to equitably defeat plaintiff's motion for preliminary injunction. Specifically, defendants allege that plaintiff's claims are barred by abandonment, unclean hands, laches, acquiescence, and estoppel. Each of these defenses may defeat plaintiff State law claims as well as its claims under sections 32 and 43(a) of the Lanham Act. *Rick v. Buchansky,* 609 F.Supp. 1522, 1530–31 (S.D.N.Y.), *appeal dismissed,* 770 F.2d 157 (2d Cir.1985). Also, plaintiff's registration for the "Dial–A–Mattress" mark may be cancelled if defendants succeed in asserting the abandonment or unclean hands defenses. 15 U.S.C. § 1115(b). Defendants have not, however, demonstrated a likelihood of success on any of their affirmative defenses.

### A. *Abandonment*

■■■ Abandonment is an exception to the incontestability of a federal registration and it constitutes a break in the chain of priority in determining senior use in an action for service mark infringement or unfair competition. 15 U.S.C. §§ 1115(b)(2), 1127. *See Major League Baseball Prop., Inc. v. Sed Non Olet Denarius, Ltd.,* 817 F.Supp. 1103, 1126 (S.D.N.Y.1993). A mark may be deemed abandoned by virtue of an assignment in gross, loss of distinctiveness, or non-

use of the mark. 1 *McCarthy*, §§ 17.02–03, at 17:6–7. Once abandoned, the mark reverts back to the public domain whereupon it may be appropriated by anyone who adopts the mark for his or her own use. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 627 F.2d 628, 630 (2d Cir.1980). Hence, a party that is found to have abandoned its mark is deprived of any claim to priority in the mark before the date of abandonment and may regain rights in the mark only through subsequent use after the time of abandonment. *Id.*

■ Defendants argue that plaintiff abandoned whatever rights it may have accrued in the Dial–A–Mattress during an unspecified period of non-use sometime between 1976 and 1983. Def. Mem. ¶ 29. In order for one to be deemed to have abandoned his or her mark through non-use, the party asserting abandonment bears the burden of proving non-use coupled with an intent not to resume commercial use within a reasonable time. *Silverman v. CBS, Inc.*, 870 F.2d 40, 45 (2d Cir.), *cert. denied*, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989); *Neva–Wet Corp. v. Never Wet Processing Corp.*, 277 N.Y. 163, 173–74, 13 N.E.2d 755 (1938). Although defendants may succeed in cancelling plaintiffs registration by proof of abandonment by a preponderance of the evidence, *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023 (Fed.Cir.1989), an affirmative defense alleging a break in plaintiff's chain of priority under the doctrine of abandonment must be proven by clear and convincing evidence. *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *Murphy Door Bed Co. v. Interior Sleep Systems, Inc.*, 687 F.Supp. 754, 761 n. 8 (E.D.N.Y.1988), *aff'd*, 874 F.2d 95 (2d Cir. 1989); *Neva–Wet*, 277 N.Y. at 175, 13 N.E.2d 755.

Defendants have not come forward with any proof of either non-use or an intent not to resume use. Indeed, defendants have done nothing more than make a cursory allegation of an unspecified period of non-use during a seven year span. Although prolonged non-use may itself give rise to a presumption of abandonment, *see* 15 U.S.C. § 1127 (presumed abandoned after 2 years non-use), no proof of inactivity has been proffered by defendants. *See Silverman*, 870 F.2d at 45–46. "Abandonment being in the nature of a forfeiture, must be strictly proved." *Neva–Wet*, 277 N.Y. at 175, 13 N.E.2d 755. The record being devoid of any evidence of non-use or intent not to resume, plaintiff may not be found to have abandoned the Dial–A–Mattress mark under any standard of proof.

### B. *Unclean Hands*

■ Defendants allege that plaintiff's federal registration is contestable and its claim for equitable relief is barred by the doctrine of unclean hands. *See* 15 U.S.C. §§ 1115(b)(3), 1116. Specifically, defendants assert that plaintiff is violating section 32(b) of the Lanham Act by using the Dial–A–Mattress mark "so as to misrepresent the source of the goods or services" the mark symbolizes. 15 U.S.C. § 1115(b)(3). Section 32(b) denies even an incontestable registrant the benefit of their trademark where that party's use of the mark is tainted with inequity or bad faith. *Precision Instrument Mfg., Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 815, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945); *Getty Petroleum Corp. v. Shore Line Oil Co.*, 642 F.Supp. 203, 205–06 (E.D.N.Y.1986). Defendants charge that plaintiff's public claim of "creation and origination" of the Dial–A–Mattress mark is calculated to deceive the public as to the true source of plaintiff's services. Amend.Ans. ¶ 75. In essence, defendants merely restate their claim of senior use and unfair competition and do not state a claim of inequitable conduct in the absence of proof of an intent to deceive the public and actual or probable deception. *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir.1970). Therefore, defendants' reliance upon the unclean hands doctrine is misplaced.

### C. *Estoppel By Laches and Acquiescence*

■ Laches or acquiescence may estop the owner of a mark from asserting his or her rights in the mark under both state and federal law. *Saratoga Vichy*, 625 F.2d at 1040–41. A laches or acquiescence defense

does not divest the trademark owner of the right to use the mark but may deprive him or her of any remedy for infringing uses by others. *Saratoga Vichy*, 625 F.2d at 1040. Under the doctrine of laches, the holder of a right may be estopped from asserting that right by virtue of their prolonged negligence or inaction in failing to enforce the right. *Id.* at 1040. Similarly, a party's affirmative conduct that gives rise to actual or apparent consent to another's use of a trademark may bar the trademark owner from initiating a lawsuit founded upon the consensual use. *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 704 (2d Cir.1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Dwinell–Wright Co. v. White House Milk Co.*, 132 F.2d 822, 825 (2d Cir.1943). Although plaintiff's prolonged delay in bringing this lawsuit and the present motion raises an issue of laches, defendants have not alleged any affirmative conduct by plaintiff that could conceivably be construed as granting defendants consent to use the Dial–A–Mattress mark so as to support an acquiescence defense. *See Dwinnell–Wright*, 132 F.2d at 825 (acquiescence requires assurance or "active encouragement"); 3 *McCarthy* § 31.14(1), at 31:69–70 (same). Thus defendants' acquiescence defense has no merit and we will turn to consideration of defendants' claim of laches.

There is no bright line test for determining when and to what extent a party's delay will bar a trademark owner's right to a remedy for another's infringing use. The courts have unnecessarily complicated the laches defense by blurring the distinction between laches and estoppel defense such that the two are commonly referred to interchangeably. *See Saratoga Vichy*, 625 F.2d at 1040–42; *Tanning Research Lab., Inc. v. Worldwide Import & Export Corp.*, 803 F.Supp. 606, 609 (E.D.N.Y.1992). Although mere delay will not bar a suit for injunctive relief absent proof of "some element of estoppel, such as reliance by the defendant," *Saratoga Vichy*, 625 F.2d at 1040, protracted delay alone may be sufficient to defeat a claim for past monetary damages. *McLean v. Fleming*, 96 U.S. 245, 251, 24 L.Ed. 828 (1878). However, "[i]n order to find that a claimant's interminable inactivity or negligence has

swollen to the level of disabling laches or estoppel, his delay must be an inexcusable one that has consequentially prejudiced an innocent user." *Johanna Farms*, 468 F.Supp. at 880.

■ Professor McCarthy persuasively simplifies the analysis by proffering a two-tier inquiry that may bar part or all of plaintiff's claims under the separate doctrines of laches and estoppel. 3 *McCarthy* § 31.03, at 31:11–17. First, the defendant must prove actual or constructive knowledge of the infringing use and inexcusable delay in prosecuting the infringing party. Second, the defendant must prove the traditional elements of an estoppel defense, namely reasonable reliance upon plaintiff's action or inaction and a balance of the equities in the defendant's favor. *See Heckler v. Community Health Svcs. of Crawford, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *McDonald's Corp. v. Druck & Gerner, DDS., P.C.*, 814 F.Supp. 1127, 1136–38 (N.D.N.Y.1993); *Johanna Farms*, 468 F.Supp. at 880–82. Proof of the former may bar some or all monetary damages but will not preclude the imposition of injunctive relief. *McLean*, 96 U.S. at 251; *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1209–10 (E.D.N.Y.1983). Proof of the latter is an affirmative defense to both legal and equitable claims for relief. *See Ancient Egyptian Arabic Order. v. Michaux*, 279 U.S. 737, 748–49, 49 S.Ct. 485, 489 73 L.Ed. 931 (1929); *Johanna Farms*, 468 F.Supp. at 880–881.

This two-part test is consistent with a long line of appellate court precedent and faithful to the equitable principles underlying the laches doctrine. A party who sleeps on his or her rights in the face of a known infringing use is deemed to have consented to such use and hence may not be heard to complain of lost profits emanating from the infringing use. *McLean*, 96 U.S. at 253; *Brittingham v. Jenkins*, 914 F.2d 447, 456–57 (4th Cir. 1990). However, when the slumbering trademark owner awakens from her sleep to assert her rights in the trademark, the implication of consent is defeated and the right to future relief in the form of injunction or damages is not lost unless defendants can

make out a claim for equitable estoppel. *Menendez v. Holt,* 128 U.S. 514, 524, 9 S.Ct. 143, 145, 32 L.Ed. 526 (1888); *Grotrian, Helferich, Schulz, Th. Steinweg Nachf. v. Stienway & Sons,* 523 F.2d 1331, 1344 (2d Cir.1975); *Stork Restaurant,* 166 F.2d at 363. Indeed, under New York law, a laches defense to trademark infringement only negates a claim for monetary damages and will not lie against a claim for injunctive relief "in the absence of elements creating equitable estoppel." *Cohn & Rosenberger, Inc. v. Kaufman & Rudarman, Inc.,* 280 A.D. 241, 113 N.Y.S.2d 62, 63 (App.Div.1952). Although defendants may be able to establish laches sufficient to preclude an accounting for past profits, this Court finds plaintiff's delay to be no bar to equitable relief.

■ Defendants have not demonstrated a prima facie case of estoppel sufficient to bar the imposition of injunctive relief. Assuming that plaintiff's prolonged delay in the present case is inexcusable, the defendants still may not claim reasonable reliance upon plaintiff's inaction since the defendants were fully aware of plaintiff's claim of superior rights in the Dial–A–Mattress mark. *Tanning Research,* 803 F.Supp. at 609–610. Defendants received several warning letters as early as 1987 as recent as May 1990 as well as repeated phone calls right up to the commencement of this lawsuit threatening legal action if defendants' infringing activities continued. M. Graber 198–203. *See Saratoga Vichy,* 625 F.2d at 1041 ("A simple warning letter would have sufficed" to avoid laches during seven year delay). In addition, defendants were acutely aware of plaintiff's prior lawsuit in this district claiming superior title to the Dial–A–Mattress mark. Defendants claim to have expended significant sums on advertising and greatly expanded their business in reliance upon plaintiff's inactivity. However, an infringing user who expands his or her business by exploiting the good will of another's service mark and by riding the coattails of the senior user's advertising and reputation does so at his or her peril. *See Citibank, N.A. v. Citibanc Group, Inc.,* 724 F.2d 1540, 1546–47 (11th Cir.1984). Although defendants claim to have accrued significant good will under the guise of the Dial–A–Mattress mark, such "[a]dvantages built upon a deliberately plagerized make-up do not seem to us to give the borrower any standing to complain that his vested rights will be disturbed." *My–T Fine Corp. v. Samuels,* 69 F.2d 76, 78 (2d Cir.1934).

Finally, a balance of the equities in this case counsels in favor of rejecting the laches defense and granting preliminary relief to plaintiff. As noted throughout this opinion, the defendants' business practices are littered with symptoms of bad faith and calculated efforts to trade off the reputation and good will of plaintiff. *See McDonald's Corp.,* 814 F.Supp. at 1138–39 (bad faith alone sufficient to bar laches defense). The only detriment the defendants are now facing is the prospect of continuing their business without the benefit of plaintiff's substantial advertising and good will. But this detriment is of no concern at all, for "in cases of piracy of a mark ... the court imposes the chance of loss upon those who deliberately steal the name." *International Film Service Co. v. Associated Producers, Inc.,* 273 F. 585, 588 (S.D.N.Y.1921). Furthermore, defendants' use of the Dial–A–Mattress name is primarily in advertising—they are not incorporated under the Dial–A–Mattress name, maintain no bank accounts or business accounts under that name, and do not use the name or mark on invoices or letterhead. *See* Hrg. 62, 154, 174; M. Graber 397–98. Accordingly, any hardship imposed upon defendants as a result of an injunction is minimal in comparison to the potential harm to plaintiff's good name if the defendants' were permitted to continue their infringing use. Therefore, defendants have failed to show prejudice or reasonable reliance upon plaintiff's inaction and thus have not demonstrated a *prima facie* case of estoppel by laches.

### III. Irreparable Harm

■ Injunctive relief is an extraordinary remedy that should not be granted in the absence of irreparable harm such that the movant has no adequate remedy at law. *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 80 (2d Cir.1990); *Schwinn Bicycle Co. v. Ross Bicycles, Inc.,* 870 F.2d 1176, 1180 (7th Cir.1989). In an action alleging trade name or service mark infringement or

unfair competition, the senior user of the mark is presumed to suffer irreparable harm to their good will and reputation when the activities of a competitor demonstrate a "high probability" of consumer confusion as to sponsorship of the trade name or service mark. *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 41–42 (2d Cir.1986); *Romm Art Creations, Ltd. v. Simcha Int'l, Inc.*, 786 F.Supp. 1126, 1140 (E.D.N.Y.1992). This presumption is not absolute, however, and will not pertain where delay, undue hardship or other factors negate any inference of irreparable harm emanating from the junior party's use. *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276–77 (2d Cir.1985).

Both parties oppose the present cross-motions by asserting that the claims are barred by laches and estoppel in light of each movant's respective delay in prosecuting their rights. However, quite apart from the equitable defenses raised to the substantive merits of this suit, delay in pursuing a preliminary injunction may bar this Court from granting relief *pendente lite* due to the apparent absence of the urgency necessary to support a finding of irreparable harm.[17] *Id.; Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir.1985). But procrastination alone is not a *bar* to granting a preliminary injunction unless rising to the level of laches. *Citibank*, 756 F.2d at 276. Rather, undue delay divests the trademark holder of the presumption of irreparable harm that ordinarily attaches upon a showing of probable confusion. *See Id.* ("tends to neutralize any

presumption"); *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir.1977); *Ventura Travelware, Inc. v. A to Z Luggage Co.*, 1 U.S.P.Q.2d 1552, 1553 (E.D.N.Y.1986). Accordingly, where there has been extraordinary delay in proceeding with the motion for preliminary injunction, the movant must affirmatively demonstrate the existence of irreparable injury beyond the mere fact of probable confusion. *MGM–Pathe Communications Co. v. Pink Panther Patrol*, 774 F.Supp. 869, 873 (S.D.N.Y.1991).

Plaintiff's failure to promptly assert its rights in the Dial–A–Mattress name,[18] while depriving it of any presumption of irreparable harm, does not diminish the probability of irreparable injury in the present case. Considering this Court's finding that plaintiff is the probable rightful owner of the "Dial–A–Mattress" name, we find the prospect of future money damages to be a wholly inadequate remedy to protect plaintiff's interests. The defendants in this case have shown little concern for creditors who were unfortunate enough to become caught up in the deplorable corporate shell game defendant Mark Graber has played and pursued in order to "avoid financial problems."[19] Hrg. 189. Between 1981 and 1991, Mark Graber was the sole shareholder of at least three different New York corporations, all since dissolved, that operated the same mattress business at the same locations, apparently following one another without even changing the sign or displays in the stores.[20] This same business is now operated by a fourth

17. The parties herein, by virtue of their cross-motions seeking preliminary relief, apparently concede the existence of irreparable harm emanating out of their concurrent use of the Dial–A–Mattress name. However, since the parties' assertion of a laches defense at least raises the issue of delay in seeking relief, the presence of irreparable harm is fully explored.

18. The present suit was filed on August 5, 1992, nearly three years after the contract of sale transferring defendants' rights in the corporate name Dial–A–Mattress, Inc. to plaintiff. An Order to Show Cause seeking a preliminary injunction was filed shortly thereafter, but was withdrawn on September 9, 1992 because some or all defendants were unrepresented corporations and settlement negotiations were pending. Letter of Adam Kidan, September 8, 1992. An amended

complaint was filed in April 1993, which was not answered until August 31, 1993. Plaintiff sought leave of the Court to file the present motion by letter dated October 27, 1993.

19. These and similar acts of fraud and deceit by these defendants have added to this Court's belief that their testimony in these proceedings left a great deal to be desired.

20. Although Graber claims that no assets were transferred to the subsequent corporations, he does concede that whatever display models existed remained on the selling floor. Hrg. 185. However, Graber steadfastly denies that he or any of his subsequent corporations succeeded to any of the liabilities of their predecessors except for those debts that he expressly assumed by "handshake" with the creditors. Hrg. 177–90.

New York corporation, 2765 Bedding Corporation, owned by Graber's wife and brother. Plaintiff has introduced evidence of no fewer than three unsatisfied judgments against Graber's former corporations and one unsatisfied judgement against the present entity purportedly holding Graber's rights to the name Dial–A–Mattress. Hrg. 156–70. This Court sees no reason to require plaintiff to endure a continued loss of business during the pendency of this case, only to gain a pyrrhic victory after a trial on the merits. *See Omega Importing Corp. v. Petri–Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir. 1971) (fact that defendant cannot satisfy money judgement supports irreparable injury).

Furthermore, it is manifestly apparent that the defendants herein are attempting to usurp the good will of plaintiff by palming their services off as those of plaintiff. Defendants prominently hold themselves out as "The Original Dial–A–Mattress" in their advertisements and offer services virtually identical in every respect to those of plaintiff.[21] Also, although defendants previously advertised in the Nassau County Yellow Pages only as Mattress Madness, the 1994 edition contains no Mattress Madness advertisement but does, for the first time, conspicuously advertise defendants as "Dial–A–Mattress" in large red print accompanied by a toll-free telephone number. A court of equity can not placidly permit a second comer to "reap where one has not sown." *See Day–Brite Lighting, Inc. v. Sta–Brite Flourescent Mfg. Co.,* 308 F.2d 377, 383 (5th Cir.1962). Indeed, even when a party has been dilatory in enforcing its rights, "the courts will not shy away from issuing such relief where to do so would be to aid a second comer who has sought to trade upon the efforts and good will of the first comer." *Colgate–Palmolive Co. v. North American Chemical Corp.,* 238 F.Supp. 81, 87 (S.D.N.Y.1964). *Accord Ventura Travelware,* 1 U.S.P.Q.2d at 1553; *Helene Curtis,* 560 F.2d at 1333. *Cf.*

*Johanna Farms,* 468 F.Supp. at 881–82 (senior user denied injunction when seeking to exploit junior party's reputation).

Finally, this Court finds that the substantial actual consumer confusion precipitated by defendants continued use of the Dial–A–Mattress name implores a finding of probable irreparable harm. Both parties have cited numerous examples of consumers and creditors alike who have mistaken one party for the other, including episodes where advertisers erroneously billed the defendants and the Better Business Bureau mistakenly cited plaintiffs. Such confusion poses a great threat of irreparable injury to plaintiff in light of the inevitable actual consumer confusion and defendants' unimpressive track record of unpaid bills and unsatisfied creditors. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir. 1986) (although inferior competing product may reduce likelihood of confusion, it increases probability of injury to good will). Accordingly, notwithstanding plaintiff's purportedly inexplicable delay in prosecuting its rights, this Court finds probable irreparable harm to plaintiff in the absence of injunctive relief. As the Sixth Circuit recognized long ago:

> If the complainants be not protected by preliminary injunction against such use ... there is every inducement to the defendant to delay and prolong the litigation, continuing, meanwhile, the assaults upon the good will of the complainants, so that, even if a final decree be at last rendered in favor of the complainants, the good will will have been so seriously and irreparably injured, if not in a great measure destroyed, as to leave the complainants practically without a remedy.

*Garrett v. T.H. Garrett & Co.,* 78 F. 472, 479 (6th Cir.1896).

This Court declines to leave so precious an asset unprotected in the hands of a likely infringing user.

---

**21.** Both entities advertise bedding services by offering:

(1) Bedding for sale 24 hours a day, 365 days a year through a toll free telephone number;
(2) Sealy, Serta and Simmons brand mattresses at prices "60% off department store prices;"

(3) Pay only upon approval;
(4) Product delivered within a two hour time window;
(5) Free set up and removal of old bedding. DX 56–64; PX 113–199; Vincens 176–78.

## Conclusion

Plaintiff has demonstrated a likelihood of success on the merits of this dispute and probable irreparable injury in the absence of injunctive relief. In contrast, defendants have failed to demonstrate a likelihood of success at a trial on the merits of any of their statutory and equitable defenses to infringement or unfair competition. Consequently, plaintiff's motion for a preliminary injunction is granted. Submit an order, on notice.

SO ORDERED

Int. Cl.: 42

Prior U.S. Cl.: 101

**United States Patent and Trademark Office** Reg. No. 1,339,658
Registered June 4, 1985

## SERVICE MARK
### PRINCIPAL REGISTER

## DIAL A MATTRESS

DIAL A MATTRESS FRANCHISE CORP. (NEW YORK CORPORATION)
32-46 STEINWAY ST.
ASTORIA, NY 11103

FOR: RETAIL OUTLET SERVICES AND RETAIL DIRECT SALE OF MATTRESSES, IN CLASS 42 (U.S. CL. 101).

FIRST USE 8-1-1976; IN COMMERCE 9-1-1983.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MATTRESS", APART FROM THE MARK AS SHOWN.

SER. NO. 450,411, FILED 10-31-1983.

JAMES H. JOHNSON, EXAMINING ATTORNEY

---

Int. Cl.: 42

Prior U.S. Cl.: 101

**United States Patent and Trademark Office** Reg. No. 1,589,453
Registered Mar. 27, 1990

## SERVICE MARK
### PRINCIPAL REGISTER

## (212) M·A·T·T·R·E·S

DIAL A MATTRESS FRANCHISE CORP. (NEW YORK CORPORATION)
59-34 MYRTLE AVENUE
RIDGEWOOD, NY 11385

FOR: RETAIL OUTLET SERVICES AND RETAIL STORE SERVICES FEATURING MATTRESSES, IN CLASS 42 (U.S. CL. 101).
FIRST USE 8-1-1976; IN COMMERCE 8-1-1976.

OWNER OF U.S. REG. NO. 1,339,658.

THE DRAWING IS LINED TO INDICATE THAT THE AREA CODE WILL CHANGE.

SER. NO. 73-762,119, FILED 11-7-1988.

CATHERINE MCGUFFEY, EXAMINING ATTORNEY

1362

Int. Cl.: 42

Prior U.S. Cl.: 101

Reg. No. 1,554,222

United States Patent and Trademark Office Registered Aug. 29, 1989

SERVICE MARK
PRINCIPAL REGISTER

DIAL A MATTRESS FRANCHISE CORP (NEW YORK CORPORATION)
59-34 MYRTLE AVENUE
RIDGEWOOD. NY 11385

FOR SERVICES —NAMELY. RETAIL OUTLET SERVICES AND RETAIL DIRECT SALE OF MATTRESSES. IN CLASS 42 (U.S. CL. 101).

FIRST USE 5-1-1980: IN COMMERCE 5-1-1988.

OWNER OF U.S. REG NO. 1,339,658.

SER. NO. 763,315. FILED 11-14-1988.

CATHERINE MCGUFFEY. EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cl.: 101

Reg. No. 1,748,796

United States Patent and Trademark Office Registered Jan. 26, 1993

SERVICE MARK
PRINCIPAL REGISTER

DIAL A MATTRESS FRANCHISE CORP. (NEW YORK CORPORATION)
31-10 48TH AVENUE
LONG ISLAND CITY, NY 11385

FOR: FRANCHISING: NAMELY, PROVIDING TECHNICAL ASSISTANCE IN THE ESTABLISHMENT AND/OR OPERATION OF RETAIL OUTLET STORES FOR DIRECT SALE OF MATTRESSES. IN CLASS 35 (U.S. CL. 101).

FIRST USE 1-1-1991; IN COMMERCE 1-1-1991.

OWNER OF U.S. REG. NOS. 1,339,658 AND 1,554,222.

SER. NO. 74-156,218, FILED 4-11-1991.

K. MARGARET LE. EXAMINING ATTORNEY

A - 2

Int. Cl.: 42

Prior U.S. Cl.: 101

## United States Patent and Trademark Office

Reg. No. 1,697,217
Registered June 23, 1992

## SERVICE MARK
### SUPPLEMENTAL REGISTER

## THE BEDDING CONSULTANTS

DIAL-A-MATTRESS FRANCHISE CORP. (NEW YORK CORPORATION)
59-34 MYRTLE AVENUE
RIDGEWOOD, NY 11385

FOR: RETAIL SERVICES IN THE FIELD OF MATTRESSES, IN CLASS 42 (U.S. CL. 101).

FIRST USE 6-24-1990; IN COMMERCE 6-24-1990.

SER. NO. 74-108,222, FILED P.R. 10-19-1990; AM. S.R. 11-25-1991.

COLLEEN SCHALLOCK, EXAMINING ATTORNEY

---

Int. Cl.: 42

Prior U.S. Cl.: 100

## United States Patent and Trademark Office

Reg. No. 1,728,356
Registered Oct. 27, 1992

## SERVICE MARK
### PRINCIPAL REGISTER

## 1-800-MATTRES, AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS

DIAL-A-MATTRESS FRANCHISE CORP (NEW YORK CORPORATION)
3110 48TH AVENUE
LONG ISLAND CITY, NY 11385

FOR RETAIL OUTLET SERVICES AND RETAIL DIRECT SALE OF MATTRESSES, IN CLASS 42 (U.S. CL. 100).
FIRST USE 6-24-1990; IN COMMERCE 6-24-1990.

OWNER OF U.S. REG. NOS. 1,339,658, 1,554,222, AND 1,589,453.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "1-800", APART FROM THE MARK AS SHOWN.

SER. NO. 74-108,279, FILED 10-19-1990.

ROXANNE BRASCHNEWITZ, EXAMINING ATTORNEY

A - 3

1364

Int. Cl.: 42

Prior U.S. Cl.: 101

Reg. No. 1,757,763

United States Patent and Trademark Office Registered Mar. 9, 1993

## SERVICE MARK
### PRINCIPAL REGISTER

## PHONE-A-MATTRESS

DIAL-A-MATTRESS FRANCHISE CORP. (NEW YORK CORPORATION)
59-34 MYRTLE AVENUE
RIDGEWOOD, NY 11385

.FOR. RETAIL OUTLET SERVICES AND RETAIL DIRECT SALE OF MATTRESSES. IN CLASS 42 (U S. CL. 101).

FIRST USE 11-30-1992, IN COMMERCE 11-30-1992.
OWNER OF U S REG. NOS. 1,339,658, 1,554,222, AND OTHERS

SN 74-112,084, FILED 11-5-1990

KATHLEEN M. VANSTON. EXAMINING ATTORNEY

A - 4